## McCotter *against* Hooker.

</div>

Where the plaintiff sends to the office of a common carrier goods to be transported to another place, and a contract is there made for their transportation, and a receipt given simply specifying the receipt of the goods marked with the consignee's address, the receipt and parol contract may be given in evidence in an action against the carrier.

Such receipt is not a contract embodying the previous oral engagement. *Semple.*

In an action for neglect to transport goods from New York to Chicago in the fall of 1847, evidence to show the time when the navigation from Buffalo to Chicago ordinarily closed, is inadmissible. The evidence upon that point should be confined to the year in question.

Where the plaintiff entrusted a box to the defendant to be carried from New York to Chicago in the fall of 1847, and it was not delivered there until in the spring of 1848, and then in a damaged condition, and was then returned to the defendant's office at New York; held that it was competent for him to show the admissions of the defendant's agents at New York at the time of the return in relation to the detention of the goods. They were a part of the *res gestæ.*

This action was brought upon a contract to transport a box containing patent medicines from New York to Chicago in the fall of 1847. In the complaint it was alleged that on the sixth day of November, 1847, the plaintiff shipped on board the defendant's boat Abbot, at the city of New York the box in good order, under a contract made then and there with the defendant, to carry it safely to Chicago and deliver it there to Neely, Lawrence

SEL. IV.—63.

& Co., for W. W. Danenhower, before the winter of 1847 set in, at the regular price for freight to be paid on delivery: that it was not delivered until some time in the spring of 1848, and then in bad condition, by reason of which the plaintiff lost the whole value. The defendant in his answer denied the making of the contract to deliver the box at Chicago before the winter of 1847 set in, and from want of knowledge controverted the allegations as to the injury to the box and contents. He then averred that after the delivery of the box at New York, it was forwarded to Buffalo as expeditiously as the state of navigation at that season of the year would permit, and was forwarded thence to Chicago at as early a day as practicable, and delivered at Chicago with care and in as good condition as when received. The reply contained a denial of these averments.

The action was tried before Mr. Justice EDWARDS, at the New York circuit in January, 1850. The plaintiff proved by William B. Mann, that on the fifth day of November, 1847, he was sent by the plaintiff to the office of the defendant in New York, over the door of which was a sign " Troy and Ohio Line," and that he inquired of the person in charge, if goods shipped at that time would be taken to Chicago that season? He replied he had no doubt they would; that they had shipped goods the year previous as late as the fifteenth of the month. Mann reported the conversation to the plaintiff, and in pursuance of the information, he decided to send the box. The next day the box was taken to the office, and by the direction of the person who had previously given the information and who was then in charge of the office was carried to the boat Abbot and delivered to the captain. This person in the office wrote a receipt and delivered it to Mann, which was in the following form;

" Rec'd, New York, November 6th, 1847, on Old Line Tow Boat Abbot, in good order, one box Mdze. marked

W. W. Danenhower, Chicago, Ill. Care Neely, Lawrence & Co.

HAVILAND."

The receipt and testimony in relation to the manner in which it was given were objected to, and the objection overruled and an exception taken.

The witness further testified that the person in charge of the office and who gave the receipt was a stranger to him. The defendant thereupon objected to the testimony received, on the ground that it did not appear that the defendant had any connection with the person in the office who made the representations. The objection was overruled and the defendant excepted.

The plaintiff then proved that the defendant was the proprietor of the "Troy and Ohio Line," and engaged in the business of transportation: that the signature "Haviland" to the receipt was in the handwriting of one Haviland who was employed in the defendant's line; and that boats reach Buffalo on average in twelve days from Troy. In cross-examining one of the plaintiff's witnesses, the defendant's counsel inquired, "How late in November do the boats leave Buffalo for Chicago?" The plaintiff's counsel objected to the question, on the ground that the inquiry must be confined to the year 1847. The court sustained the objection and the defendant's counsel excepted. The defendant's counsel then asked the witness, "Did you ever know boats to leave Buffalo for Chicago or the upper lakes after the eighteenth of November in any year?" To this question the plaintiff's counsel objected unless the question was restricted to the year 1847. The court sustained the objection. It was then shown that the box arrived at Chicago in the latter part of May, 1848, with its contents very much injured, and that it was returned by the consignee to the plaintiff at New York. Other testimony was given by the plaintiff, having reference to questions arising in the case which were not

examined in the opinions delivered in this court, and the plaintiff rested.

The counsel for the defendant then moved that the plaintiff be nonsuited on the following grounds: 1st. That no contract to carry the goods in question to Chicago, had been made by him or his agent as set forth in the complaint. 2nd. That no injury or damage to the goods in question, had been proved, resulting from any negligence or ill conduct of the defendant or his agents. The counsel for the plaintiff thereupon recalled William B. Mann and asked him to state what took place at the office of the Troy and Ohio Line, at the time before spoken of by him. To this question the counsel for the defendant objected, on the ground that it did not appear that the person at such office was authorized to make any contracts for the defendant, which objection the court overruled, and the defendant's counsel excepted. The witness testified as follows: " I asked the man there in charge whether if a box was then shipped for Chicago, it would go through before the close of navigation? He replied he had no doubt it would. The substance of what I said was that the intention was to ship the goods if they would go through, if not, not; he said he had no doubt they would; that goods shipped as late as the fifteenth the year before, did go through. I think I saw the same man the next day; I told him I had brought the goods, and he directed me to leave them on the boat in front of the store." The plaintiff again rested his case, and the counsel for the defendant renewed the motion for a nonsuit on the grounds before stated, and also 3rdly, on the ground that the plaintiff had proved no cause of action whatever against the defendant. The court refused to grant the nonsuit and the defendant's counsel excepted.

The defendant then gave evidence tending to show that in the fall of 1847, twenty days would not be an unusual length of time for goods to be on their way from New York to Buffalo: that the defendant's line was not interested in

transporting goods beyond Buffalo, except upon special contracts which were sometimes made, but that when contracts were made for carrying goods at a specific price from New York to Chicago, the defendant would be interested in the freights between Buffalo and Chicago: that in such cases the Troy and Ohio Line agree to carry goods for a specific price to Chicago, and then receive as their share of freight, the price for carrying to Buffalo, which the defendant receives in settlement with the connecting lines, he receiving the whole freight from the shipper or consignee. The defendant then called James H. Wilgus as a witness who testified that he was his agent in 1847: that he wrote the body of the. receipt given in evidence: that he recollected the whole transaction. The shipper of the box sent word to him the day before it was sent down to see if it would get through to Chicago that fall. The witness stated to him that there was no chance for it, though it might possibly go through, that if sent down he would do the best he could with it, but would not give a bill of lading nor a receipt for it as received by the Troy and Ohio Line. The next day the person came down with the box and had no receipt for it. Witness showed him the boat, told him to write a receipt himself, and they would take care of it. He asked if witness would write a receipt, so as to show it was delivered to the tow boat. The witness then wrote the receipt produced on the trial, leaving out the name of the Troy and Ohio Line entirely. The defendant's counsel here rested.

The plaintiff then proved that after the return of the box to New York in the spring of 1848, his clerk went to the place where it was in store, and finding its contents broken he refused to receive it, and informed the defendant's agent about the understanding that it was to have been delivered at Chicago in the previous fall, and that the latter replied that it must have been delayed on the road somewhere; it must have been packed away in some storehouse and stowed away under some goods and left; that was the

only reason he could give why it was left. This evidence was objected to by the defendant's counsel, and an exception was taken. The plaintiff again rested.

The defendant's counsel then offered to read in evidence the depositions of James H. Congden, Asel Hooker and John G. Negus, taken in January, 1849, under an order of Mr. Justice WATSON, of the supreme court, made December 12, 1848, pursuant to section 355 of the *Code of Procedure of* 1848. The plaintiff objected to the reading of the depositions, the court excluded them and the plaintiff excepted. The cause was then submitted to the jury, who found a verdict for the plaintiff for $130, upon which judgment was entered, and affirmed at a general term in November, 1851. The defendant appealed to this court.

*H. P. Hunt,* for appellant.

*N. Hill, Jr.,* for respondent.

GARDINER, J. The receipt was properly received in evidence. Wilgus, who drew it, and Haviland, who executed it, were both agents of the defendant. They are proved to be such by the testimony of Wilgus himself. The receipt was important to show a delivery, if for no other purpose.

The receipt did not contain any contract, unless one is to be inferred from the delivery of the goods, marked for Chicago. If this is equivalent to the engagement to transport them to the place of designation; the contract as claimed by the plaintiff is established. If, however, the instrument was merely an acknowledgement of the receipt of the goods distinguished by a particular direction, which is the plaintiff's construction, then there was no written engagement to transport the goods to any place, and it was competent and proper that the agreement should be shown by parol. This will dispose of the first two exceptions taken by the defendant, and in effect of the third and fourth also.

McCotter *against* Hooker.

It is immaterial whether the judge decided correctly or not in overruling the motion for a nonsuit at the time when it was made. The subsequent testimony by Wilgus, removes all difficulty as to the agency of those who received the merchandise and contracted with the plaintiff; and the case was therefore properly left to the jury.

The fifth exception, I think, ought not to prevail. The goods shipped had found their way back to New York in the spring of the following year in a damaged condition. McCotter, a witness, in company with the plaintiff, saw them at the warehouse, and subsequently informed the agent of the defendant of their condition. In the course of the conversation, and as a part of it, the witness spoke of the arrangement of the previous fall, made in his presence with the same agent for their shipment. The reply of the agent, which went to account for the delay and the condition of the goods, and their being found in New York instead of Chicago, their place of destination, was objected to by the defendant, and the exception to the ruling of the court constitutes the fifth exception. I think that the declaration of the agent in relation to property entrusted to him in the usual course of business, as to the reasons of the delay in the transportation, and even as to the contract made with him in reference to the carriage, admissible, as a part of the *res gestæ* of the particular agency. The principal resided at Troy; the agent in New York, for the receipt and shipment of goods, with authority to contract, must necessarily have the right to answer questions as to all matters fairly within the scope of the power exercised by him in the ordinary routine of the duties devolved upon him by his principal. The objection in this instance was general and would prohibit, if it prevailed, the agent for assigning any reason or excuse for the non shipment of goods for six months, or from answering any inquiries upon the subject. The judge excluded certain evidence taken under the act of 1848, which is the subject of another ex-

ception. The trial was in 1850, when the law of 1848 had been repealed. As the common law recognizes no testimony except such as is delivered in open court, the defendant could not avail himself of these depositions unless he had acquired a vested interest in them, which placed them beyond the interference or control of the legislature. Where evidence arises from a contract incidentally, it can not be abrogated by a statute law, without impairing the contract, which is prohibited by the constitution of the United States. That legislation which regulates the *manner* in which the testimony of witnesses is to be taken and received, is a matter pertaining to the remedy in suits at law or in equity, over which the states have exclusive power, so far as it respects their own courts. In this case, although the examination was had and the testimony taken in pursuance of an existing law, yet the same statute directed and authorized the depositions to be read in open court, as evidence in the cause. By the repeal, this last provision was as though it had never existed, (*Dwarris on Stat.* 676,) and the defendant consequently was thrown back upon his common law remedy of *viva voce* examination.

The repeal deprived the defendant of no right; it did not shut out the evidence by particular facts, but regulated the manner in which it should be given to the jury. In the case of *Hitchcock* v. *Way*, (6 *Adolp. & Ellis*, 943,) when issue was joined, the defendant had a perfect defence, under an act avoiding the bill of exchange when given for a gaming transaction. It was held that this was not taken away by a subsequent statute in favor of *bona fide* holders. In other words it was held, and very properly, that a subsequent statute, even in England, should not be construed as *creating* a contract, where none existed at the commencement of the suit, or at the time when issue was joined between the parties. Such a law would, I apprehend, be unconstitutional with us.

But such was not the law of which the defendant complains: it touches no right: the same facts which exonerated

McCotter *against* Hooker.

him from liability to the plaintiff, would have the same effect under the acts of 1849 and 1850.

The judgment should be affirmed.

JEWETT, JOHNSON, TAGGART and MORSE, JJ., concurred with Judge Gardiner.

RUGGLES, Ch. J., gave no opinion.

MASON, J., did not hear the argument.

WILLARD, J., (dissenting.) I. Assuming that the man with whom the plaintiff's agent dealt was authorized to bind the defendant, no such contract was made as is set forth in the complaint. It is not a case of a mere formal variance which might be overlooked, but is an entire failure of proof. The general rule is that when a written contract is made, all previous conversations are merged in the writing. When a receipt is in the nature of a contract it is within the general rule, and is not liable to be varied by parol evidence. (*Egleston* v. *Knickerbocker*, 6 *Barbour*, 466; 2 *C. & H. notes*, 1439; *Howes* v. *Barker*, 3 *J. R.* 509; 5 *Cowen*, 497; 5 *Wend.* 187; 14 *Wend.* 26.) When the cases speak of evidence being admissible to vary or explain a receipt, it is only intended that it is so with respect to the consideration; and with respect to that, the explanation which is admissible is such as is not contradictory to, but consistent with the instrument. (*McKinstry* v. *Pearsall*, 3 *J. R.* 319; 6 *Barbour*, 463.) The receipt in this case contains no contract to deliver the goods at Chicago before the close of navigation that year, or at any time.

This is not a case where the contract can rest partly in writing and partly in parol, if there be any such case. See *Howes* v. *Barker*, 3 *J. R.* 509. There all the conversation between the parties preceded the giving of the receipt. They must be considered as merged in it.

But if the parol conversation can be added to the receipt, it falls short of making the contract declared on. The agent merely expressed an opinion, but made no

SEL. IV.—64.

agreement that the goods should be carried through to Chicago that fall. The agreement which the law would imply from the receipt is, that the goods should be carried through according to the usual course of transportation business, that is, as soon as they could be conveniently carried through. But the complaint does not count on such a contract, and it is immaterial to inquire whether it was broken or not.

I think the learned judge should have granted the nonsuit. There was no evidence tending to prove the contract set forth in the complaint.

II. If I am wrong here, I think the judgment should be reversed for refusing to allow the defendant's counsel to ask on the cross-examination, the plaintiffs' witness, whether he ever knew boats to leave Buffalo for Chicago or the upper lakes after the 18th of November in any year. The objection to it was, that the answer should be restricted to the year 1847, and so the court held and extended it. It forms the fourth exception in the case. The plaintiff had failed to prove the contract set forth in his complaint, and was obviously seeking to recover on some contract which the law would imply from the facts. The witness had resided in Buffalo one year and was engaged in the transportation business. It was important for the defendant to show, in this aspect of the case, the usual course of transportation on the canal and the lakes. The testimony had rendered it certain that this box could not be expected to arrive at Buffalo before the 19th of November. And if vessels never had been known to leave Buffalo for the upper lakes after the 18th of November, the law would not charge the defendant with any fault for not forwarding the box after that time. The testimony was clearly admissible, and highly important to the defendant.

If an express contract had been shown to forward the box that fall, I grant the evidence was immaterial, whether restricted to 1847 or not.

III. I am inclined to think that the testimony taken on

McCotter *against* Hooker.

the part of the defendant under §§ 353, 354, 355, 356 *of the Code of* 1848, ought to have been received, notwithstanding these sections had ceased to be in force when the cause was tried. The general rule as stated by *Dwarris on Statutes*, 676, and approved by Judge Cowen in *Butler* v. *Palmer*, 1 *Hill*, 333, is, that when an act of parliament is repealed, it must be considered, except as to these transactions, *passed and closed*, as if it never existed. (*Smith on Statutes, p.* 880, § 759.) The examination of the defendant's witnesses had been closed while the act of 1848 was in force. The witnesses may be presumed to have gone beyond the jurisdiction of the court. At any rate, they were not present at the trial, and the defendant's counsel rested upon their evidence as taken in pursuance of law. The right to take the testimony in a particular way had been executed. The witnesses were liable to punishment for perjury, if their testimony was false. The defendant had complied with the law as it existed and had incurred expenses under it. Nothing remained executory or inchoate. The whole was complete.

If that testimony had been received by the jury, it furnished a perfect defence to the action. Prior to the act of April 17, 1823, (*L.* 1823, *p.* 208, § 16, *p.* 215,) testimony in chancery was taken in secret before examiners, upon written interrogatories and cross 'interrogatories, and neither party was permitted to see the testimony until publication was passed. By the act last mentioned, the parties were allowed to be present and to cross-examine the witnesses. There was no saving clause in the act as to testimony previously taken, yet we know that in all cases where the testimony had already been taken according to the former practice, it was received and acted upon by the court.

I think the judgment should be reversed and a new trial ordered, with costs to abide the event.

Judgment affirmed.