## HENRY E. ROBINSON, RESPONDENT, *v.* S. CHITTENDEN AND OTHERS, APPELLANTS.

*Owners victualling, manning and sailing a ship chartered by another — liability of, for lost freight — carrier by water — duties of — notice to consignee — section 55, act of congress of March 3, 1851 — usage of trade — what questions proper to establish.*

Where the general owner retains the possession, command and navigation of the ship, and contracts to carry a cargo of freight for the voyage, the charter party is considered a mere affreightment sounding in covenant, and the freighter is not clothed with the character or legal responsibility of ownership.

The defendants in this action were the owners, and victualled, manned and sailed a ship chartered by Moore & Co. for a voyage from San Francisco to New York. *Held*, that defendants were liable for baggage, received as freight on the vessel and lost.

A carrier by water is relieved from liability, on delivering merchandise upon a wharf and giving notice thereof to the consignee, after a reasonable time for its removal has elapsed.

Knowledge on the part of the consignee that the ship is unloading, does not impose upon him the duty of waiting at the vessel till his merchandise is discharged.

The question "Is it not customary for persons who take receipts for goods on board of a ship to procure bills of lading therefor?" and the question "Is it not customary for the manifest of the ship to be made up from the bills of lading?" are not suggestive of a custom amounting to a usage of trade.

APPEAL from a judgment directed for plaintiff at the Circuit, with a further direction that the exceptions taken be heard in the first instance at General Term.

*H. F. Hatch*, for the respondent. From the time of the receiving of the trunk on board the ship for transportation, the masters and owners had a lien on the goods for their freight, and their responsibility as carriers commenced. (*Mactaggart* v. *Henry and ors.*, 3 E. D. Smith, 398; *Camden R. R. and Trust Co.* v. *Belknap*, 21 Wend., 354; *Schroeder* v. *Hudson R. R. R. Co.*, 5 Duer, 55; *Grosvenor* v. *N. Y. C. R. R. Co.*, 39 N. Y., 34.) Whether received and put on board by the charterers or by the officers of the ship is immaterial. The latter were bound to deliver the trunk at the place of destination. (*Langworthy* v. *N. Y. and Harlem R. Co.*, 2 E. D. Smith, 196.) Where the agents of a vessel have clerks on the wharf, who sign bills of lading for goods delivered to them, the agents and owners are bound by the acts of the clerk. (*Goddard* v. *Mallory*, 52 Barb., 87; *Schroeder* v. *Hudson R. R. R. Co.*, 5 Duer, 55; *Rawls* v. *Seymour*, 3 Keyes, 577.) It is admitted that the defendants were owners of the ship Great Republic, and the evidence shows that Moore & Co. chartered her " for that voyage," and had nothing to do with victualling, manning or sailing the ship, and that the trunk was delivered to the acting freight clerk of the ship, and by him placed on board, and was duly demanded while the ship was unlading at its port of delivery. Under such circumstances the law is well settled that the owners, as carriers, are liable. (*Clarkson* v. *Edes*, 4 Cow., 470; *Mactaggart* v. *Henry and others*, 3 E. D. Smith, 398; *Campbell* v. *Henry et al.*, 8 N. Y., 430; 1 H. Bl., 359; *Brower et al.* v. *Water Witch*, 19 How. P. R., 241, NELSON, C. J.; § 53, act of congress, March 3, 1851.) The charterer in this case did not man, victual and navigate the ship. But upon the principle that ." the ship is bound to merchandise and the merchandise to the ship," the owners are liable *in solido* while engaged as common carriers, and it makes no difference to the shipper whether or not the vessel has been given out as a general or chartered ship. (Act of congress, March 3, 1851, § 53; *Parish* v. *Crawford*, 2 Strange, 1251; *Clarkson* v. *Edes*, 4 Cow., 470; *Marcardier* v. *Chesapeake Ins. Co.* 8 Cranch, 49; *McIntyre* v. *Bowne*, 1 Johns., 229; *Campbell* v. *Perkins et al.*, 8 N. Y., 430.) It was the duty of the defendants, as carriers of goods for hire, to deliver the trunk on its arrival, or to give notice to the plaintiff, or his agents, the consignees, of

their readiness to deliver the same. (*De Mott* v. *Laraway*, 14 Wend., 225 ; *Price* v. *Powell*, 3 N. Y., 322 ; *Gibson* v. *Culver & Brown*, 17 Wend., 305 ; *Fenner* v. *Buff. and State Line R. R. Co.*, 44 N. Y., 505 ; *Owners of the Mary Washington* v. *Ayers*, 5 Amer. Law. Reg. [N. S.], 692 ; *The Tangier*, 11 Law Rep. [N. S.], 12 ; *Fisk* v. *Newton*, 1 Den., 45 ; *McAndrews* v. *Whitlock, Jr.*, 52 N. Y., 46.) Delivery at the wharf, without notice to the consignee, is not sufficient. (BRONSON, Ch. J., in *Price* v. *Powell*, 3 N. Y., 322 ; *McAndrews* v. *Whitlock, Jr.*, 52 id., 46.)

*Samuel H. Valentine*, for the appellants. The plaintiff having made an express agreement with the charterers, the law will not imply an agreement with the defendants, and thus overcome the express provisions of the parties. (*Calkins* v. *Falk*, 39 Barb., 620.) These defendants cannot be held liable to the plaintiff in this action, on the common-law liability of common carriers, irrespective of any contract, because under a charter giving to the charterers the whole capacity of the ship, the owners thereof are not common carriers, although under the charter they are to victual, man and sail her. (*Lamb* v. *Parkman*, Sprague, 343 ; *Tuckerman* v. *Brown*, 17 Barb., 191.) This rule does not require notice to be given *after* each package has come out, that it *is* out. Notice that the ship is about to discharge, giving the time, when and place, is sufficient. It is then the duty of each consignee to be present and receive his goods. (*Cope* v. *Cordova*, 1 Rawle, 203 ; *The Tangier*, 11 Law Rep. [N. S.], 12 ; S. C., 3 Ware, 110 ; affirmed, 23 How. [U. S.], 28.) Where the residence of a consignee, claiming the right to notice of the arrival of goods, is not known to the carrier, " the consignee ought, before the arrival of the goods, to give such information as will enable the carrier to give the requisite notice." *Pelton* v. *Rens. and Sara. R. R. Co.*, 54 N. Y., 214, 217 ; *Goold* v. *Chapin*, 10 Barb., 618 ; *Stephenson* v. *Hart*, 4 Bing., 476.) In such a case as this, where the consignee was unknown through his own neglect, notice by publication in the newspapers was the only possible, and a sufficient notice. (1 Parsons' Maritime Law, 154, note 5 ; *Cope* v. *Cordova*, 1 Rawle, 203 ; *The Tangier*, 11 Law Rep. [N. S.], 12.) Actual knowledge makes any formal notifying unnecessary. (*Fenner* v. *Buff. and State Line R. R. Co.*,

44 N. Y., 510, 511.) By then storing the trunk, in good order, in a public warehouse, the liability of the defendants ceased. (Angell on Carriers, § 295, and cases cited; *Fisk* v. *Newton*, 1 Den., 45; *Mayell* v. *Potter*, 2 Johns. Cas., 371; *Williams* v. *Nichols*, 13 Wend., 58; *Northrup* v. *Syracuse, etc., R. R. Co.*, 5 Abb. Pr. [N. S.], 425; *Fenner* v. *The Buff. and State Line R. R. Co.*, 44 N. Y., 505, 509; *Witbeck* v. *Holland*, 45 id., 13; *Zinn* v. *N. J. Steamboat Co.*, 49 id., 445; *Pelton* v. *Rens. and Sara. R. R. Co.*, 54 id., 214; *Chickering* v. *Fowler*, 4 Pick., 371; *Pickett* v. *Downer*, 4 Vt., 21.) It is well settled that an agent cannot bind his principals by acts, admissions, or declarations, not within the scope of his authority. (*Berger* v. *Miller*, 4 Wash. C. C., 280; *General Interest Ins. Co.* v. *Ruggles*, 12 Wheat., 408; *N. Y. Life Ins. and Trust Co.* v. *Beebe*, 7 N. Y., 364; *Mortimer* v. *Cornwell*, Hoffm., 351; *Brisbane* v. *Adams*, 3 N. Y., 129.) It is the duty of the owner of goods to deliver them to the carrier, properly marked, so that they may be entered in the carrier's books, and if he neglects to do it, and loss occurs in consequence, he must bear the loss. (*Boney* v. *The Huntress*, 4 West. Law Jour., 38; S. C., 4 Hunt's Merch. Mag. [Jan., 1841], 83.)

BRADY, J.:

In June, 1865, the plaintiff, at San Francisco, California, shipped a trunk, in good order, marked " H. E. R.," on the ship Great Republic, then lying at a wharf in San Francisco, for New York, and obtained a receipt for the same from the freight clerk, who received the trunk and put it on board the vessel. The ship was owned by the defendants, but was chartered by Moore & Co. for the voyage to New York, but victualled, manned and sailed by the owners. The plaintiff left California for New York, where he arrived prior to the Great Republic. He called on Wells, Fargo & Co. and gave them the receipt given him on the shipment of his trunk, with instructions to obtain it for him on the arrival of the ship. When that event occurred, the receipt was presented to the consignees of the ship, who directed the person presenting it to the delivery clerk of the ship, and the receipt was accordingly presented at the place where the ship was discharging, and the trunk demanded. The answer was that it had

not come out of the ship, but as soon as it did, Wells, Fargo & Co. would be notified. The trunk was not delivered but placed in store, without notice to the plaintiff or his agents of its going out of the ship, or the disposition made of it. The plaintiff never received the trunk or its contents. The plaintiff insists that the defendants are liable to him for the loss, notwithstanding the charter which was made for the voyage. It is admitted that the defendants are the owners of the ship, and it appears that although Moore & Co. chartered her, the defendants were to victual, man and sail her. They retained the possession, control and navigation of the vessel therefor, and were the owners for the voyage, regarded as carriers and liable for the loss. (*Campbell* v. *Perkins*, 8 N. Y., 432 ; *Parish* v. *Crawford*, 2 Strange Rep., 1251 ; *Clarkson* v. *Edes*, 4 Cow. Rep., 470 ; *Mactaggert* v. *Henry*, 3 E. D. Smith Rep., 398 ; *Marcardier* v. *The Chesapeake Ins. Co.*, 8 Cranch, 49.) Where the general owner retains the possession, command and navigation of the ship, and contracts to carry a cargo of freight for the voyage, the charter party is considered a mere affreightment sounding in covenant, and the freightor is not clothed with the character or legal responsibility of ownership. In such a case the responsibility rests on the general owner. (8 Cranch, *supra.*) See, also, section 55, act of congress March 3, 1851, which, recognizing the distinction suggested, declares that the charterers of any ship or vessel, in case he or they shall man, victual and navigate the vessel at his or their expense, or by his or their own procurement, shall be deemed the owner or owners of such vessel within the meaning of the act, etc. It is therefore correctly said by the plaintiff's counsel that upon the principle that " the ship is bound to merchandise, and the merchandise to the ship," the owners are liable *in solido* while engaged as common carriers, and it makes no difference to the shipper, whether or not the vessel has been given out as a general or chartered ship. Where the owner mans and navigates the vessel he is liable for all losses, not included in the excepted perils. The liability of the defendants as carriers thus appearing, did they discharge their duty to the plaintiff in delivering the goods? A carrier by water may relieve himself from liability by delivering merchandise upon a wharf with notice thereof to the consignee, after reasonable time to him to remove it has

expired. (*Price* v. *Powell*, 3 Comst. R., 322; *Redmond* v. *Liverpool N. Y. and Phila. S. Co.*, 46 N. Y. Rep., 583; *McAndrew et al.* v. *Whitlock, Jr.*, 52 N. Y. Rep., 45.)   He must, it would seem from these cases, give the consignee due notice before unlading, and yield a reasonable time to take charge of and secure the goods.   The propriety of such a rule is manifest, from the facts in this case, from which it appears that the ship was several weeks unloading.   If the consignee or owner, after such notices, and the expiration of a reasonable time, does not remove the goods, they may be stored by the carrier, and his liability thereby ended.   (Cases, *supra*.)   In this case the arrival of the vessel was known to the shipper, and the necessary document placed in the hands of his agents to procure the goods.   They were not ready for delivery when demanded, and no notice was given that they would be or were unladen, either to the plaintiff or his agents, who were known to the defendants.   The mere knowledge that the ship was unloading, did not impose upon the plaintiff or his agents the duty of waiting for weeks to see the merchandise discharged from the vessel.   The object of notice is to prevent this burden, and the duty of requiring it is neither severe nor unjust. The plaintiff proved that the clerk, who was at the ship while she was unloading, promised to send notice.   The testimony was objected to; but if not admissible as a part of the *res gestæ* (*McCotter* v. *Hooker*, 8 N. Y., 497), it could not prejudice the defendants, because it was nothing more, by way of duty, than the law required of them without the promise.   The defendants, not having given notice of the landing of the trunk, were not authorized to place it in store at the risk of the plaintiff.   His right was to receive it from the ship or the wharf, until he had lost it by delay beyond a reasonable time.   If it was intact in the store, the defendants should have produced it, and thus either relieved themselves of liability or mitigated the demand.   The defendants did not do their duty, therefore, in reference to the delivery of the trunk.   It cannot be said, with propriety, that this case involves any question arising from the circumstance that the consignee could not be found.   The plaintiff was represented by Wells, Fargo & Co., acting as his agents, having the receipt in their possession, which was exhibited to the consignees of the vessel and to the delivery clerk at the ship,

where she was discharging. The defendants were informed, there-fore, who the consignee was, and before the plaintiff's trunk was taken from the ship. The defendants' request, under the facts and circumstances disclosed, therefore, to go to the jury on the question of negligence, was properly denied. It was not disputed that the plaintiff's trunk was not delivered, or that there had been no notice by the carriers of their readiness to deliver — no notice in fact of any thing in relation to the unlading of the goods. This established the liability of the defendants, and there was no question of negli-gence, upon disputed evidence, involved in the cause. The omis-sion to deliver the trunk was not, in any way, excused by evidence, of facts relieving the defendants of their responsibility for that omis-sion. The proof of negligence was therefore conclusive, and became a question of law. There was no conflict in the evidence going to establish any of the circumstances upon which the ques-tion depended. (*Bernhard* v. *R. and S. R. R. Co.*, 1 Abb. Ct. App. Dec., 131.)

The offer of the defendants to show the usual custom and course of business for receipts for goods to be surrendered and bills of lad-ing taken, and the ship's manifest to be made up from the bills of lading, was properly excluded.

The questions were: Is it not customary for persons who take receipts for goods on board of a ship to procure bills of lading therefor? Is it not customary for the manifest of the ship to be made up from the bills of lading? Is it customary for the con-signees to send notice to the persons who have freight on board? The first and second questions are not suggestive of a custom, amounting to a usage of trade binding upon the plaintiff, and in reference to which he was supposed to contract. It may have been customary to do both of the acts mentioned for the convenience of the carrier, but the omissions would not destroy the contract expressed by the receipt. There was no offer to show any rule to that effect. The third question was one in which the plaintiff had no interest. He was not dealing with consignees, but with the defendants as owners of the ship, who were his carriers. The question about there being any memorandum or any papers of the ship, from which notice to any body could be given with relation to the delivery of the trunk, was equally inadmissible. The plain-

tiff had given notice at the office of the consignees and at the ship, to a person there intrusted with the delivery of the freight, and who, in reference to it, so far as the plaintiff was concerned, represented them.

The defendants say he was not an employe of theirs, but of the consignees, but the answer is that the ship was in their possession and under their control, and he was there acting on their behalf and relative to their business, namely, the delivery of the freight. The plaintiff was under no obligation to investigate his position. It was enough that he was the delivery clerk, engaged in and about a business which was clearly the defendants, namely, discharging the freight. The question which was designed to show that Mr. Bailey was instructed to deliver no cargo without an order of the consignees, was properly excluded.

There was no refusal to deliver upon any such grounds. The agents of the plaintiff were, in fact, sent by the consignees to the ship. This was not disputed. There was nothing said about any written or verbal order from them, but the direction to go to the ship was in effect a verbal order. The various questions argued have thus been considered, and it seems that the defendants established neither a defense, nor a right to go to the jury on the only question which they desired to submit, namely, negligence. The plaintiff is therefore entitled to judgment with costs.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed, with costs.