BARKER, P. J., HAIGHT and BRADLEY, JJ., concurred.

Order affirmed, without costs.

---

KINCAID A. HUGHSON AND OTHERS, AS THE BOARD OF HEALTH OF BRIGHTON, RESPONDENTS, *v.* THE CITY OF ROCHESTER, APPELLANT.

*Nuisance—action by a board of health to restrain it—the right of action was taken away by chapter 270 of 1885, repealing chapter 351 of 1882.*

In an action, brought by the board of health of the town of Brighton, organized under the provisions of chapter 431 of the Laws of 1881, to restrain the defendant, a municipal corporation, from discharging the contents of certain sewers, or permitting the same to run over lands in the town of Brighton, or into any of the creeks, streams or waters of that town, the right of action was claimed to exist by virtue of the provisions of chapter 351 of the Laws of 1882.

*Held,* that the last-mentioned act was repealed by section 9 of chapter 270 of the Laws of 1885, providing that " chapter 152 of the laws of 1847, chapter 324 of the Laws of 1850, and the several acts amendatory thereof ; chapter 512 of the Laws of 1880, excepting subdivision 34 of section 1 of said act and all other acts or parts of acts, general or special, inconsistent with this act, are hereby repealed."

That the act of 1882, entitled " An act supplemental to chapter 431 of the Laws of 1881, entitled ' An act to amend chapter 324 of the Laws of 1850,' " was, within the provisions of the repealing act above-mentioned, an act amendatory of chapter 324 of the Laws of 1850.

That the claim that the act of 1885 only repealed such portions of the act of 1850 and the acts amendatory thereof, as were inconsistent with the provisions of the act of 1885 could not be sustained, as it was plain that the words " inconsistent with," etc., in the act of 1885 qualified only the words " all other acts or parts of acts," and did not qualify the preceding enumeration of acts including the act of 1882.

*Semble*, that the effect of the repealing act of 1885 was to abolish the boards of
    health in towns existing before the passage of that act; that in any event, the
    act of 1882 being repealed, the right of action given thereby fell with the act itself,
    as a right of action is a matter of remedy merely, and any remedy given by
    statute may be repealed by statute.

The course of legislation in this State on the subject of boards of health reviewed
    and considered.

APPEAL from a judgment entered on the verdict of a jury in an
action brought to restrain a nuisance, and from the order of the court, at
the Monroe Special Term, directing judgment thereon awarding an
injunction; also, from an order denying the defendant's motion for
a new trial on the minutes.

*H. J. Sullivan*, for the appellant.

*W. S. Hubbell*, for the respondents.

DWIGHT, J.:

The action was to restrain the defendant from discharging or
permitting the discharge of the contents of certain sewers upon or
over any of the lands in the town of Brighton or into any of the
creeks, streams or waters of that town. The judgment awarded a
perpetual injunction restraining the defendant from discharging or
permitting the discharge of such sewage into Thomas creek in said
town, or into any sewer, drain, ditch or stream leading to or emptying
into said Thomas creek.

The action was brought in 1884 by the board of health of the
town of Brighton, organized under the provisions of chapter 431 of
the Laws of 1881, and the right of action was claimed by the
plaintiffs by virtue of the provisions of chapter 351 of the Laws of
1882. That act, amending section 3 of the act of 1881, by sub-
division 3 of the amended section, gave to the boards of health in
towns the power to make orders and regulations concerning the sup-
pression and removal of nuisances injurious to public health; and,
by subdivision 9 of the same section, to maintain actions in any
court of competent jurisdiction to restrain by injunction the viola-
tion of such orders and regulations. That the action was well
brought and might be maintained under the provisions of the act of
1882 was held by the Court of Appeals in a decision rendered in
March, 1887, and reported under the title of *Gould et al.*, v. *The*

*City of Rochester* (105 N. Y., 46). That decision reversed the judgment of the General Term of this court rendered in 1886 (39 Hun, 79), which sustained the judgment of the Special Term rendered in May, 1885, dismissing the plaintiff's complaint.

Upon neither of the appeals above referred to was there any discussion, either by counsel or the court, of the effect of the act of 1885 (Laws of 1885, chap. 270), which the defendant now insists wholly repealed the act of 1882 and deprived the plaintiffs of any right of action given thereby. That objection was made on the second trial of the action, and the principal question presented on this appeal relates to the effect of the act of 1885 above cited. The repealing clause is found in section 9 and is as follows: " Chapter 152 of the Laws of 1847; chapter 324 of the Laws of 1850 and the several acts amendatory thereof; chapter 512 of the Laws of 1880, excepting subdivision 34 of section 1 of said act, and all other acts or part of acts, general or special, inconsistent with the provisions of this act, are hereby repealed." The acts of 1847 and 1880 here mentioned relate only to the registration of vital statistics and have no reference to the matters now under consideration.

The act of 1882 is entitled, " An act supplemental to chapter 431 of the Laws of 1881, entitled ' An act to amend chapter 324 of the Laws of 1850 ;' " and in its first section the act of 1882 declares that it amends the act of 1881, which amends the act of 1850. There can be no question but that the act of 1882 is one of the acts, amendatory of the act of 1850, which are repealed by the act of 1885.

Counsel's contention that the act of 1885 repeals only such portions of the act of 1850, and the acts amendatory thereof, as are inconsistent with the provisions of the act of 1885, cannot be sustained. It is plain that the words " inconsistent with," etc., qualify only the words " all other acts and parts of acts," etc., and that the effect of the latter clause of the section is to add to, and not to qualify the preceding enumeration of the acts repealed. It is unnecessary to inquire whether the act of 1882 would have been repealed by implication, if not expressly repealed, by the act of 1885. It was expressly repealed. The only question is, what was the effect of such repeal upon this action and the right of action asserted therein? A brief review of the course of legislation in

this State on the subject of boards of health, may assist to a correct decision of that question.

Prior to the year 1850 there had been no general legislation on that subject. No boards of health had been created by the laws of this State, except in certain cities and incorporated villages, whose charters or special acts of incorporation made provision for boards bearing the name or possessing the functions of boards of health.

The act of 1850, by section 1, provided for the organization of such boards in every city and incorporated village of the State, "in which there is not now a board of health duly organized;" and, also, by section 2, for the organization of such boards in all the towns of the State. The section read: "The supervisor and justices of the peace, or the major part of them, of each town in this State, shall be a board of health for such town, for each year, whenever, in the opinion of the majority of such board, the public good requires it." Section 3 of that act prescribed the powers and duties of all the boards of health within the State. Its introductory words were: "The several boards of health now organized in any city or village in this State, and the several boards of health constituted under this act, shall have the power, and it shall be their duty," etc.; the words "boards of health now organized," etc., referring, evidently, to boards already existing by virtue of the charters or acts of incorporation of cities and villages. This section 3 has been retained, with additions and modifications, in all the successive acts amendatory and supplementary to the original act; and substantially the same introductory words have also been retained but, as it seems, not always with as clear and intelligent a purpose and meaning as in the original act of 1850.

The next in the series of legislative acts on this subject was that of 1867 (Laws of 1867, chap. 790). It amended section 3 of the act of 1850 by excepting from its operation the boards of health "in the metropolitan district;" by which, it may be supposed, was intended "the metropolitan sanitary district," erected by chapter 74 of the Laws of 1866, and consisting of the counties of New York, Kings, Westchester and Richmond and part of the county of Queens; otherwise the same designation of the boards of health, whose powers and duties were prescribed, was retained as in the act of 1850. The next act, that of 1870 (Laws of 1870, chap. 559),

added to section 3 a subdivision 9, which, for the first time, conferred upon the boards of health included within the designation above described, the power to maintain actions in the courts, to restrain violations of their orders and regulations.

Next in the order of these enactments was that of 1881. (Laws of 1881, chap. 431.) It amended the act of 1850 in important particulars. By section 1 it provided for the appointment and organization of new boards of health in all the cities of the State (except New York, Brooklyn, Yonkers and Buffalo), including those in which such boards had been established by charter or act of incorporation, with the proviso, however, that "this section shall not be construed to remove any of the existing boards of health in any of the cities of this State; but this successors of such boards shall be appointed as in this section provided." The same section provided for the appointment of a new board in every village in which one was not already duly organized; thus saving all those boards of health in villages which had been organized either by provisions of acts of incorporation or under the act of 1850. By section 2 the act provided for newly constituted boards of health in all the towns of the State, adding to the town officers, or a majority of them, who, *ex-officio*, constituted such board for each town, under the act of 1850, a citizen of such town of full age, to be elected by them; and this provision was without any saving clause, either by exception, as in the case of villages, or by proviso, as in the case of cities, to save the boards already organized in towns. As, by the act of 1850, these boards were constituted "for each year." Section 3 of the oiginal act was amended so as to include, for the first time, in the designation of boards of health which should be subject to the provisions of the act, those already organized *in towns;* although, as we have seen, the preceding section provided for new boards to be constituted in all the towns of the State, and although (by section 6) all acts and parts of acts inconsistent with this act were repealed, and (by section 7) the act took effect immediately. It is apparent that there were no boards of health already organized in towns which continued to exist after the passage of the act of 1881.

The act of 1882 made no change in the constitution of any of the boards of health, but further enlarged and defined the powers

and duties of existing boards, retaining the designation of the boards, subject to its provisions, which had been used in the last preceding act; the inclusion of the several boards of health "now organized" in towns (as well as in cities and villages) referring properly to those boards constituted under the act of 1881, which, in that respect, remained unchanged.

Last of all came the act of 1885. It was no longer amendatory or supplemental to previous legislation, but consisted of a sweeping repeal of all existing laws on the subject of boards of health, and the substitution of its own provisions therefor. After excepting certain cities from its operation, it saves nothing which existed under previous laws, except the boards of health in cities and villages during their current terms of office. This it does by the concluding sentence of section 1, which is significant of the legislative construction of the effect of the statute. It is as follows: "This section shall not be construed to remove any of the existing boards of health in any of the cities or villages of this State, but the successors of such boards shall be appointed as in this section provided." Section 1 had provided for the organization, *de novo*, of boards of health in all the cities and villages of the State (with the exception of the cities named), and the legislature was probably right in supposing that, but for the saving clause above quoted, all existing boards of health in such cities and villages would have been abolished.

Section 2 provides for the new organization of boards of health in all the towns of the State, and there is no saving clause in respect to the existing boards in towns. The new boards differ in their constitution and in their terms of office from those previously existing. Instead of certain town officers, *or a majority of them*, and a citizen of the town elected by them, the new board consists of the whole number of such town officers, the town clerk and a citizen of the town, and instead of being constituted for each year the new boards continue in office until their successors are chosen. The section also prescribes the time when such boards shall be constituted, viz., within thirty days after the town election in each year. Here, then, was an act of the legislature which, twenty days after its passage, left no other law on the statute book providing for the organization or recognizing the continued existence of any board of health in any town of the State.

Something of the effect of a saving clause is claimed by counsel for the respondents for the introductory words of section 3, which are as follows : " The several boards of health now organized in any city, village *or town* in this State    *    *    *    and the several boards of health constituted under this act shall have power," etc., but the retention of the words " or town " was probably due to inadvertence in following too closely the text of the same section in the act of 1882 where, as has been seen, they were properly used ; here their use was ineffective. When this act should take effect there would cease to be any board of health already organized in any town of the State. At that moment the act of 1850 and all the acts amendatory thereof would stand repealed, and all the boards of health created by those acts, and not saved by the repealing act, would be abolished. It is impossible to avoid the conclusion that such was the effect of the repealing act of 1885 in respect to the boards of health in towns existing before the passage of that act.

But it was not necessary to go so far in order to attain the result reached in this case. This action was brought by virtue of the provisions of the act of 1882, giving to the board of health of the town of Brighton the right of action to restrain, by injunction, the violation of its orders and regulations made before the passage of the act of 1885. The act of 1882 being repealed, the right of action given thereby fell with it A right of action is a matter of remedy merely, and any remedy given by statute may be repealed by statute. This principle has been universally recognized and applied. The law on the subject, as deduced from the authorities, ancient and modern, is fully considered and clearly stated by Judge COWEN in the leading case of *Butler* v. *Palmer* (1 Hill, 324), a case which has lost none of its authority in the fifty years since the decision was reported. It was not the case of a penalty, but of a remedy — lost by repeal of the statute by which it was given. The doctrine of the case goes much further than is necessary for the purposes of this appeal. It holds that there is no vested right in a mere right of action, and even that vested rights which have been conferred by statute are not secure against subsequent legislation unless they have attained the *status* of contracts, and thus are protected by the guaranties of the Constitution. There can be no doubt that a mere authority to maintain a particular form of action for the enforce-

ment of a remedy may be taken away by the same legislative power by which it was conferred.

If it be granted that the orders and regulations of the boards of health were in the nature of judgments of courts of competent jurisdiction, and that they cannot be abrogated by subsequent legislation which repeals the statute under which they were made, that does not affect the question whether the right to bring an action for their enforcement, conferred by the same statute, will survive its repeal. It seems very clear that such is not the case; and that this action could not be maintained after the repeal of the act of 1882. It could not be maintained under the act of 1885, since it was commenced before the passage of that act, and that act contained no provision saving actions pending at the time.

How far the effects of the repeal in 1885 were within the contemplation of the legislature and intended by it, and, how far they were the result of careless legislation, it would be useless to inquire. The language of the repealing clause is unambiguous and the results herein indicated cannot be avoided upon any theory that the legislature did not contemplate or comprehend the effect of its action. (*Andrews* v. *Long*, 79 N. Y., 574.)

We think the motion for a nonsuit, on the ground of the repeal of the statute under which the action was brought, ought to have been granted; and that, for the error of its denial, the judgment should be reversed; and since, if we are right in our conclusion, a new trial would not avail the plaintiffs, judgment should be ordered for the defendant.

BARKER, P. J., HAIGHT and BRADLEY, JJ., concurred.

Judgment and order reversed, and judgment ordered for the defendant, without costs.