THE TOWN OF WIRT, Plaintiff, *v.* THE BOARD OF SUPERVISORS OF ALLEGANY COUNTY, Defendant.

THE TOWN OF BELFAST, Plaintiff, *v.* SAME, Defendant.

THE TOWN OF FRIENDSHIP, Plaintiff, *v.* SAME, Defendant.

*Town — its right to make a county contribute to the support of bridges — a statutory right lost by repeal — vested rights under a statute — submission of a controversy — rights saved — estoppel — parts of a statute not included in a revising statute, not revived by construction.*

Prior to the passage of chapter 568 of the Laws of 1890, known as the "Highway Law," the burden of supporting bridges within towns was cast upon the towns. alone and counties could not be compelled to contribute thereto.

The remedy given to towns by section 130 of chapter 568 of the Laws of 1890, enabling them in certain cases to compel the county to contribute to the support of bridges in a town, was purely statutory, and any right given by the Legislature through a statute can be divested by the Legislature.

The right of towns to compel a county to contribute in certain cases to the support of bridges in a town, given by section 130 of chapter 568 of the Laws of 1890, was taken away by chapter 416 of the Laws of 1895.

Three towns presented to the board of supervisors of a county claims for the support of bridges in such towns under chapter 568 of the Laws of 1890; the board of supervisors did not pay them and postponed its consideration for one year. Subsequently the town and the board of supervisors filed in the clerk's. office of the county a submission of the controversy, upon an agreed state of facts; four days prior to such filing chapter 416 of the Laws of 1895 went into effect repealing chapter 568 of the Laws of 1890, and practically depriving the towns of any remedy against the county.

*Held,* that by the mere filing of the submission the towns acquired no vested rights under chapter 568 of the Laws of 1890;

That, assuming the validity of section 31 of the Statutory Construction Act (Chap. 677 of the Laws of 1892), it could not be said that the case came within that section as it saves from the repeal of a statute a "right accruing, accrued or acquired," while in the case at bar it could not be said that the town acquired any right by the mere presentation of the claims and their practical rejection by the board of supervisors.

A part of the submission was a resolution, passed by the board of supervisors, requesting their representatives in the Legislature to secure the repeal of the Law of 1890, chapter 568, section 130, in so far as it created a liability upon the part of the county to reimburse a town for expenditures upon bridges within the town; and also directing the employment of counsel to resist the payment of the claims presented, if proceedings were taken to enforce them by mandamus.

*Held*, that, in view of this resolution, it could not be claimed that the board of supervisors in postponing the claims for one year had estopped itself from pleading, as a defense to the claims, chapter 416 of the Laws of 1895.

When a statute is revised, and parts of the former statute are omitted from the statute revising it, the part so omitted cannot be revived by construction.

SUBMISSION of a controversy upon an agreed statement of facts, pursuant to section 1279 of the Code of Civil Procedure.

*S. M. Norton*, for the plaintiff.

*Charles H. Brown*, for the defendant.

WARD, J.:

The towns of Wirt, Belfast and Friendship in the county of Allegany, in December, 1894, respectively presented to the board of supervisors of Allegany county a verified petition through the supervisors of their respective towns, setting forth that in several years mentioned the expense for the construction, care, maintenance and repair of its bridges had exceeded one-sixth of one per centum of the assessed valuation of the taxable property of the town for each of those years, and claiming that the county should pay not less than one-third part of such excess. These claims were made under section 130 of chapter 568 of the Laws of 1890, known as the Highway Law, which was as follows: "The towns of this State, except as otherwise herein provided, shall be liable to pay the expenses for the construction and repair of its public free bridges constructed over streams or other waters within their bounds, and their just and equitable share of such expenses when so constructed over streams or other waters upon their boundaries, except between the counties of Westchester and New York; and when such bridges are constructed over streams or other waters forming the boundary line of towns, either in the same or adjoining counties, such towns shall be jointly liable to pay such expenses, except that when the whole expense in any one town for any one year, for the construction, care, maintenance, preservation and repair of its bridges, shall exceed one-sixth of one per centum on the assessed valuation of the taxable property of the town for that year, the county in which such town is located shall then pay not less than one-third part of such excess. Each of the counties of this State shall also be liable to pay for the construction, care, maintenance, preservation and repair of public

bridges lawfully constructed over streams or other waters forming its boundary line, not less than one-sixth part of the expenses of such construction, care, maintenance, preservation and repair."

The petition of the town of Wirt simply set forth that from the 1st day of March, 1894, to the eighth day of November in that year, the expense of the town in the construction, repair and maintenance of its bridges was $2,193.20, and exceeded one-sixth of one per centum of the assessed valuation of the town for that year in the sum of $1,365.89, and prayed that one-third of such excess should be spread by the board of supervisors of the county upon the county. The bridge or bridges upon which this expenditure was made was not described in the petition, nor was the expense incurred given in items as required by section 132 of the act quoted, which section is as follows: "The commissioners of highways of every town in which the whole or any part of any free bridge may be shall make and deliver to the supervisor of the town on or before the first day of November in each year a written statement verified by one of them, containing a description of such bridge, the whole expense in items incurred by the town during the year preceding, for its construction or repair."

The petition of the town of Friendship set forth that between the first of March and November, 1892, the town expended in building an iron bridge at the foot of Belmont hill, known as Dayton bridge, $4,202.46; repairing Pearse bridge, $5; repairing bridge at Nile, $40; making an excess of expenses, above the one-sixth of one per centum of the assessed valuation of the town for the year 1892, in the sum of $2,702.82. No further items were given of the expense or description of the bridges.

The town of Belfast presented four separate claims for construction and repairs of bridges within that town for the years 1891, 1892, 1893 and 1894. In these claims the bridges upon which the expenditures were made seem to have been properly described, and the expenditures properly made out in items as required by the statute. The excess of the one-sixth of one per centum of the assessed valuation of the town for 1891 was claimed to be $2,277.88. In 1892 such excess was claimed to be $885.10. In 1893, $1,132.44; and in 1894 such excess was $3,076.43.

All of these claims were presented after the 1st day of November,

1894. Upon the presentation of these claims the chairman of the board of supervisors, as the case discloses, was duly authorized by the board, by resolution, to execute the statement of facts contained in the submission. The submission was made pursuant to section 1279 of the Code of Civil Procedure, and recites that a controversy existed between the plaintiffs and defendant, and contained a statement of the facts above briefly referred to and was verified, pursuant to the statute, on the 11th day of April, 1895. On the 30th day of April, 1895, the submission was filed in the Allegany county clerk's office.

The counsel produced upon the argument a paper which they treated as a part of the case on submission, being in the form of a stipulation, which was as follows: "The Towns of Wirt, Belfast and Friendship v. The Board of Supervisors of Allegany County. On December 12, 1894, the following resolutions were adopted by the Board of Supervisors of Allegany County: "Whereas, certain claims for the repair, maintenance and building of bridges in some of the Towns of Allegany County have presented, or may present, such claims under the Laws of 1890, sec. 130, chap. 568; and, whereas, it is thought advisable on the part of the Board of Supervisors, as such, not to audit any such claim or claims for such purposes prior to 1894, and there being no decision of the courts on such claims prior to said date, a test case must be had; therefore,

" *Resolved*, That the chairman of the Board of Supervisors be authorized to enter into an agreement with a representative of the several towns and submit a test case, and that the chairman be authorized to employ an attorney.

" *Resolved*, That the action of this Board of Supervisors on all claims presented by towns for money expended for bridge work be postponed until the annual session in 1895, and that no claim heretofore presented shall be prejudiced, and no advantage shall be taken or objection made by the Supervisors of Allegany County to any such claims by reason of such postponement, and the said claims shall be taken up and acted upon at the session in 1895, with the same effect as though disposed of at the annual session in 1894."

On the evening of the same day, and after the passage of the above resolutions, the following resolutions were adopted:

" *Resolved*, That the Supervisors of Allegany County do respectfully ask our Senator from this district and Member of Assembly

from this county to use their influence to secure the repeal of the law of 1890, chap. 568, sec. 130, in so far as it may create a liability on the part of a county to reimburse any town therein for the building, maintaining, constructing or repairing of public bridges within the bounds of said town.

"*Resolved*, That in case there is a mandamus served upon the Board relative to the claims presented against the county for building bridges in certain of the towns that the chairman of the Board be hereby empowered to employ counsel for the Board to defend the county against any and all of such claims in such manner and to such an extent as he may deem for the best interests of the county.

" It is hereby stipulated that the foregoing statement and resolutions be added to the agreed case hereinbefore made herein and filed in Allegany county clerk's office.

" Dated, *August* 15, 1895."

This paper was filed in Allegany county clerk's office August 15, 1895.

It is doubtful whether this last paper should be considered by us at all, as section 1281 of the Code of Civil Procedure provides that the action instituted by the filing of a submission " must be tried by the court upon the case alone ; and the case, submission, affidavit and a certified copy of the judgment and of any order or paper necessarily affecting the judgment constitute the judgment roll," but perhaps it may be treated as an additional statement under the latter clause of section 1281, although not verified as prescribed in section 1279.

On the 26th day of April, 1895, four days prior to the filing of the submission in the clerk's office, an amendment to section 130 above quoted took effect, being chapter 416 of the Laws of 1895 and entitled " An act to amend the Highway Law relating to liability of towns for construction and care of public bridges." And provided : " Sec. 130 of chap. 19 of the General Law known as the Highway Law is hereby amended so as to read as follows : Sec. 130. The towns of this State, except as otherwise herein provided, shall be liable to pay the expenses for the construction and repair of its public free bridges constructed over streams or other waters within their bounds, and their just and equitable share of

such expenses when so constructed over streams or other waters upon their boundaries, except between the counties of Westchester and New York; and when such bridges are constructed over streams or other waters forming the boundary line of towns, either in the same or adjoining counties, such towns shall be jointly liable to pay such expenses. Each of the counties of this State shall also be liable to pay for the construction, care, maintenance, preservation and repair of public bridges, lawfully constructed over streams or other waters forming its boundary lines, not less than one-sixth part of the expenses of such construction, care, maintenance, preservation and repair," thus eliminating entirely from the statute the provision upon which the claims of the plaintiffs in this action were predicated, so that at the time of the filing of this submission the law upon which the claims of the plaintiffs were founded had no existence, but was repealed. (*Matter of Estate of Prime,* 136 N. Y. 355; *People* v. *Wilmerding,* Id. 363; *McDermott* v. *Nassau El. R. R. Co.,* 32 N. Y. Supp. 884.)

The defendant contends, *first,* that the claim of the town of Wirt should be rejected because the claim is not in conformity with the statute in not describing the bridges and in not setting forth the items of expenditures. The same objections are made to the claim of the town of Friendship so far as the items not being set forth, and further that it was not presented in time.

As to all the claims of the town of Belfast the defendant objects that they were not presented in time, with some other objections which will not be considered, and finally the defendant contends that the law upon which all these claims were founded having been repealed prior to the commencement of this action none of them are valid or can be enforced, and asserts the principle that a right of action is a matter of remedy merely, and any remedy given by a statute may be repealed by a statute. This proposition seems to be well supported by authority. (*Butler* v. *Palmer,* 1 Hill, 324; *Church* v. *Rhodes,* 6 How. Pr. 281; *Washburn* v. *Franklin,* 35 Barb. 600; *Curtis* v. *Leavitt,* 15 N. Y. 153; *McCotter* v. *Hooker,* 8 id. 506; *Hartung* v. *The People,* 22 id. 103; *Smith* v. *The People,* 47 id. 338; *Smith* v. *Banker,* 3 How. Pr. 142; *Victory Webb Printing Co.* v. *Beecher,* 26 Hun, 49; *Board of Health* v. *City of Rochester,* 1 N. Y. Supp. 725.)

Prior to the act of 1890 the burden of supporting the bridges within the towns was cast upon the towns alone. The counties could not be compelled to contribute toward such support. The remedy, therefore, given the towns in 1890 was purely statutory, and the principle is a familiar one that a right given by the Legislature through a statute can be divested by the Legislature at will. Sometimes the repeal is conditional, reserving rights of action that had accrued under the repealed statute. There was no saving clause in this case. The repeal was unconditional. No right by contract existed in these towns against the county. The inchoate right under the statute to contribution from the county to the expenses incurred about the bridges had not ripened into a perfect claim. The claim had simply been presented, and, upon being disputed, papers were executed looking toward a submission of the controversy to the court. No action had been commenced. By section 1280 of the Code of Civil Procedure it is provided : " The case, submission and affidavit must be filed in the office of the clerk of the court to which the submission is made. ✻ ✻ ✻ The filing is a presentation of the submission, and thenceforth the controversy becomes an action."

But the learned counsel for the plaintiffs cites section 31 of the Statutory Construction Act, being chapter 677 of the Laws of 1892, which provides that " the repeal of a statute or part thereof shall not affect or impair any act done or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be asserted, enforced, prosecuted or inflicted as fully, and to the same extent, as if such repeal had not been effected ; and all actions and proceedings, civil or criminal, commenced under or by virtue of any provision of a statute so repealed, and pending immediately prior to the taking effect of such repeal, may be prosecuted and defended to final effect in the same manner as they might if such provisions were not so repealed."

The precise effect that is to be given to this statute seems not to have been passed upon to any extent by the courts. It seems to be intended as a legislative panacea for many judicial ills. In the section quoted it not only assumes to voice the intent of all subsequent Legislatures in repealing statutes, but to assume the function of the court in construing them.

Our attention has not been called to a similar statute in this State, except chapter 21 of the Laws of 1829, which repeals numerous statutes, and adds: Section 6. "No offense committed and no penalty or forfeiture incurred previous to the time when any statutory provision shall be repealed, shall be affected by such repeal." This statute was passed upon in *Mongeon* v. *The People* (55 N. Y. 613, 618, 619), where the court confines the effect of this saving clause to the statutes repealed by said act, and the court, Allen, J., significantly adds: "The Legislature could not declare in advance the intent of subsequent Legislatures or the effect of subsequent legislation upon existing statutes."

There is appended to the Statutory Construction Law a statement of laws and statutes repealed thereby, and whether section 31, above quoted, under the authority of *Mongeon* v. *The People*, should not be limited to the statutes repealed by the Statutory Construction Law, query.

The Legislature may properly, as it often does, define the meaning of the terms used and the purposes and objects of particular statutes that are in force to take effect cotemporaneous with the statute of definitions; but it is difficult to see how the Legislature of one year can so far comprehend the nature, extent and purposes of statutes to be thereafter enacted by other Legislatures as to prescribe a rule in advance for their construction and operation; but, assuming that the saving clause of the Statutory Construction Act is to be regarded as attached to and made a part of the Repealing Act (Chap. 416 of the Laws of 1895), does it aid the plaintiffs? No action had been commenced when the repeal took effect or any legal proceedings in the proper sense, nor had any vested rights accrued or been acquired or act done further than as we have stated to present the claims to the board of supervisors and have them rejected. If it be said that the towns may have incurred increased expenditures in regard to their bridges after the passage of the original act and before it was repealed upon the faith thereof, and, therefore, the repeal impaired an act done or right accruing, the answer is that no such presumption can be indulged in, because it will not be assumed that the town authorities expended any more money upon their bridges than was actually necessary, or what they would have been compelled to have done at all events.

In any view of the case, therefore, the repeal of this statute is fatal to the plaintiffs' case.

But the learned counsel for the plaintiffs further insists that the defendant is not in a position to assert the defense of the repeal of this statute; that it is estopped from so doing or has waived the right to insist upon such a defense by reason of the resolution of the defendant, above quoted, postponing the consideration of the plaintiffs' claims until the annual session of 1895; that such postponement should not prejudice their claims, and that no advantage should be taken or objection made by the defendant by reason of such postponement. Assuming that the board could waive the effect of a statutory repeal, which is exceedingly doubtful, the most that can be said of this resolution in connection with the subsequent resolutions is that it waived the objection as to the time, because the statute required that the claims should be presented and acted upon the same year that they accrued, and the resolution postponed the matter a year.

But the very same day of the passage of this resolution the board (including the supervisors from the plaintiffs' towns) passed a further resolution asking the Legislature to repeal the very act under which the plaintiffs claim, and providing further that in case of any attempt by way of mandamus to compel the board to pay the claims in question, the chairman of the board was empowered to employ counsel to defend the county against such proceedings.

Of this resolution the plaintiffs had notice through their supervisors, who participated in the proceedings, as we assume, so that it is difficult to see how this contention can prevail, or how the defendant can be charged with any bad faith in procuring the repeal of the statute under which the plaintiffs claim.

It is also urged by the plaintiffs' counsel that the omission of the Legislature to repeal sections 132 and 133 of chapter 568 of the Laws of 1890, which point out the mode of procedure in procuring the allowance of claims, and the imposition by the supervisors of the tax therefor, indicated an intention to leave the supervisors free to act in all cases which had previously accrued, thus amounting to a saving clause in the repeal. It will be seen that these sections were necessarily retained to carry out the statute as it existed after the repeal in 1895, because then in certain cases the counties were liable

to pay not less than one-sixth part of the expense for the construction, care, maintenance and preservation of public bridges lawfully constructed over streams forming its boundary lines, which would, of course, be the boundary lines of towns as well.

When a statute is revised and parts of the former statute are omitted from the statute revising it, the parts so omitted cannot be revived by construction. (*In Matter of Appeal of Southworth,* 5 Hun, 55.)

These conclusions renders it unnecessary to consider the other objections raised by the defendant to the enforcement of these claims.

Judgment should be rendered upon the several claims enumerated in the submission in favor of the defendant, but without costs to either party.

LEWIS and BRADLEY, JJ., concurred.

In the first above-entitled action judgment directed for the defendant; in the others judgment directed for the defendant, without costs.