[PHILADELPHIA, FEBRUARY 20, 1841.]

## COLLINS and Another *against* SMITH.

IN ERROR.

1. The expiration of a statute by its own limitation, *ipso facto* revives a statute which had been repealed and supplied by it.

2. The act of the 19th of March, 1810, forbidding unincorporated banks to issue their notes, discount paper, &c., which was repealed by the act of the 21st of March, 1814, revived, on the expiration of the period of eleven years, to which the last mentioned act was limited.

THIS was a writ of error to the District Court of the city and county of Philadelphia, to remove the record of an action brought in that court by William P. Smith against T. K. and P. G. Collins.

The action was brought upon a promissory note, of which the plaintiff filed a copy in the following words, viz.:

"$463 8–100.                     Phila. Oct. 14, 1839.
Sixty days after date, we promise to pay to the order of David Hoopes, treasurer, $463 8–100 without defalcation, for value received.
                                  T. K. & P. G. COLLINS."
Endorsed David Hoopes, treasurer.
          W. P. Smith."

The defendants, in due time, filed the following affidavit of defence:

"T. K. Collins, one of the above named defendants, being duly affirmed, says, that the said defendants have a just and legal defence against the plaintiff's claim in the above action, which defence is as follows: The said defendants were induced in September, 1838, to draw, for the accommodation of Stanley & Moon, without any consideration whatever, and solely to aid them in their business, a

(Collins v. Smith.)

promissory note, dated September 3, 1838, payable to Stanley &
Moon or order, at four months, for $337 40, and to endorse the
check of Thomas Stanley (one of the firm,) on the Schuylkill Bank,
for $350, payable the 14th of January, 1839 : having obtained pos-
session of said note and check, said Stanley & Moon, instead of
using them in their business, applied to David Hoopes, who, with a
number of other persons, was engaged in carrying on an illegal
partnership or association, under the style of " The Schuylkill
Savings Institution," in the city of Philadelphia, for the purpose of
banking, without having any charter for so doing from the Common-
wealth of Pennsylvania, or being incorporated ; and said Hoopes
acting for himself and partners, discounted said note and check at
an illegal rate of interest, for said Stanley & Moon, who failed pre-
viously to their becoming due.   The Schuylkill Savings Institution
applied, when the said note and check became due, to the defend-
ants for payment, who refused to pay them ; and after much negoti-
ation, and as a compromise, defendants agreed with said Hoopes,
acting for his said partnership, that they would give their note in
his favour, as treasurer of said partnership, for the amount of said
note and check ($687 40) at sixty days, of which, when due, they
would pay ten per cent., and give a new note for the balance, at
sixty days, of which, when due, ten per cent. was to be paid ; and the
operation of paying ten per cent. at every sixty days, and giving a
new note for the balance, was to be continued until the whole
amount of said check and note ($687 40) were paid : that the de-
fendants complied with their part of said agreement faithfully ; and
three payments of ten per cent. were paid to said partnership by
defendants under it, and three renewals of notes took place, one of
which is the note sued upon in this action : that just before the said
last mentioned note became due, this deponent applied to the said
Hoopes, stating the readiness of the defendants to pay the ten per
cent., and give a new note under the agreement, and ascertained
that the partnership or institution had also failed, and had passed
the note sued on in this action to the plaintiff as a security for the
payment of a deposit of money made with the said partnership
by him, and which they were unable to pay him when called upon,
and that all the circumstances above stated in relation to said note
sued on, and the agreement for payment of said ten per cent. every
sixty days, were made known to said plaintiff when said note was
so as aforesaid passed to him ; that defendants made application
to said Hoopes, and offered to complete with him their bargain with
said partnership or institution, by paying ten per cent. of said note,
and giving a new one for the balance, but said Hoopes refused to
accept the same."

The court below, after argument, directed judgment to be en-
tered for the plaintiff, and the defendants sued out a writ of error.

(Collins *v.* Smith.)

The errors assigned were "general errors," and the following specific error, viz.: "That the court below entered judgment for the plaintiff, although a sufficient affidavit of defence was filed."

Mr. *Ingraham* for the plaintiff in error.

Every act which is prohibited by an act of assembly is so far void that the law will not aid any violater of the statute by sustaintaining an action founded on the forbidden transaction. *Seidenberger* v. *Charles's Adm.* (4 *Serg. & Rawle,* 151.)  Hence a note made on Sunday is void, *Kepner* v. *Keefer,* (6 *Watts,* 231;) though it would be good at common law. Now the act of the 19th of March, 1810, "An act supplementary to an act entitled 'An act relating to the association of individuals for the purpose of banking,'" (5 *Sm. Laws,* 108,) expressly prohibits under a penalty, the making any deposit in any such bank, or to accept in payment any note or notes issued from any unincorporated bank, knowing it to be such.  This can be no hardship on the holder of the note in question, for he received it as security only, in a transaction upon which he could not recover against the Savings Institution; and the plaintiffs in error owed him nothing, and received no value for this note; of all of which the law deems the holder to have had notice, having received the note for a precedent debt.  *Rosa* v. *Brotherton,* (10 *Wend.* 35.)  *Coddington* v. *Bay,* (20 *Johns. Rep.* 637.)

Mr. *Hopkins* for the defendant in error.

The argument on the other side would be well enough if the statute on which it is founded were in force, but it has been expressly repealed.  It is not in the Digest of Mr. Purdon as an act in force, (*Title, Banks,* p. 105, ed. of 1841,) and the act repealing it is to be found in 6 *Reed's Laws,* p. 154, and is entitled "An act regulating banks," passed the 21st of March, 1814; the 21st section of which repeals expressly, and by name, the act relied upon.  The act of March 22d, 1817, (*Purd. Dig.* 108, ed. of 1841,) sect. 7, provides, that any holder of such a note may recover it from the individual or partnership signing it or issuing it, notwithstanding it may have been signed or issued in "contradiction to law."

Mr. *Ingraham* in reply.

The act of the 21st of March, 1814, was an act of limited duration, and, by the 17th section of it, was to exist until the 1st day of April, 1825, and no longer.  Now the rule is well established, that when a repealing statute is itself repealed, the original statute is at once revived.  The expiration of a statute by its own limitation produces the same legal result, otherwise, there would be given to a statute of limited duration a continuance after its provisions were all extinct.

(Collins *v.* Smith.)

Gibson, C. J., delivered the opinion of the court.

The Schuylkill Savings Institution is an unincorporated banking association; and it is illegal if the act of the 19th of March, 1810, is still in force. That act forbade unincorporated banks to issue their notes, to lend money on business or accommodation paper, to receive it on deposit; or to do any act which an incorporated bank might do; and these prohibitions were unlimited as to duration. But an act was passed on the 21st of March, 1814, which created thirty-nine new banks, and which, having declared the contracts and notes of all unincorporated banks void, repealed the act of 1810 in terms, and limited the duration, not only of the new charters, but of its own existence, to a period of little more than eleven years. Then came the act of the 25th of March, 1824, which, without again supplying the prohibitions of the act of 1810, or continuing those of the act of 1814, renewed the charters of certain banks named in it, most of which had come into existence under the act of 1814; so that the question is, whether the expiration of a statute by its own limitation, *ipso facto*, revives a statute which had been repealed and supplied by it.

It is an admitted rule of the common law, that the repeal of a repealing statute revives the original. But in *Warren* v. *Windle*, (3 *East*, 211,) Lord Ellenborough suggested—for notwithstanding the synopsis of the case, and the quotation of it by text writers and compilers, it was not decided—that there may be a difference betwixt the repeal of a repealing act, and the expiration of it, when "though temporary in some of its provisions, it may have a permanent operation in other respects. The statute 26, G. 3," said he, " professes to repeal the statute 19 G. 2, absolutely, though its own provisions which it substituted in the place of it, were only temporary." If he meant by this that there may be a permanent repeal of provisions which are at the same time but temporarily supplied—in other words, that parts of a statute may be temporary, while other parts of it are perpetual—I admit it. A statute may be repealed without being supplied at all; and the providing of a temporary substitute does not necessarily make the repealing statute also temporary. That, however, is not the attribute of the statute before us; for every enactment, branch, and clause of it, was to cease at the time appointed. But if Lord Ellenborough meant to be understood that every present repeal is necessarily a permanent one, though declared by a temporary act, or that a statute may continue to operate as a repeal after it is itself defunct, he assumed what cannot be granted. I have found nothing like a decision or dictum to support his suggestion; and there seems to be as little foundation for it in reason. The common law is not essentially imperishable, nor does it possess more inherent power of self resuscitation than does a statute. Sir Matthew Hale thought that many things which

Vol. vi.—38

(Collins *v.* Smith.)

now obtain as common law, had their origin in parliamentary acts or constitutions made in writing by the King, Lords and Commons, though those acts are either not now extant, or, if extant, were made before the time of memory. However that may be, the common law may certainly be repealed and supplied as a statute may; and were it done by a statute of limited duration, it could scarce be maintained that the common law would not revive as soon as the statute were spent. We have a statute which directs that a remedy provided by act of assembly shall be pursued in exclusion of every other, and which is *pro tanto* a substantive repeal of the common law. It happens to be perpetual; but were it temporary, we should, according to Lord ELLENBOROUGH, have nothing to supply the place of a temporary and exploded statutory remedy, when that statute would expire—a consequence not anticipated and certainly not intended. In what does the limitation of a repealing clause differ from the repeal of such a clause? It may be thought that an immediate repeal evinces a change of intention, and that no other object can be assigned for it than the revival of the original. The revival, however, arises, not from an implication of intention, but from a removal of the pressure which kept the original statute down; and were it otherwise, such an implication would equally arise from a limitation, which is a future repeal by anticipation. It is a declaration that the statute shall stand annulled at the appointed time, and be as entirely annihilated as if it had not been enacted; so that a statute abrogated by it might less properly be said to be repealed than suspended. And it can scarce be doubted that the legislature of 1814 intended only to suspend the act of 1810, and not to abrogate it. That body was not more tolerant of unauthorised banking than were its predecessors; and that it introduced new provisions only for the sake of experiment, is evident from the fact that they were of limited duration. The object was not to protect the new banks from unauthorised competition, as it might seem to have been from the limitation of the prohibition to a period co-extensive only with the duration of their charters—for other banks, having equal claims to protection, had paid for charters with longer time to run— but it was more effectually to restrain an independent mischief which had survived every attempt to suppress it. If, then, the repeal of the act of 1810 was intended to be permanent, why were not the prohibitory sections of the act of 1814 also permanent? Perhaps it may be thought that the final disposition of the subject was purposely postponed, with a view to the result of the experiment, till further legislation should be needed for the new banks. But at the renewal of their charters in 1824, the legislature evidently thought there had been a final disposition of it already, else they would have acted on it. And they could have thought so only by viewing the approaching expiration of the repealing act as a restoration of that which had preceded it. There was no change of temper as to these

(Collins v. Smith.)

associations; for their tendency could not be disguised, and the public interest in the banking privilege was too valuable to be thrown open to those who did not pay for it. We must suppose, then, that the legislature intended to leave them to the original act; whence it results that the Schuylkill Savings Institution, being an unincorporated association for purposes of banking, is illegal, and that the note in suit, being drawn in favour of its treasurer, is void.

Judgment reversed.