The People ex rel. The Canajoharie National Bank, Appellants, v. The Board of Supervisors of Montgomery County, Respondent.

The amendment of a statute, by declaring that the same shall read as prescribed by the amendatory act, is not a repeal of the original statute; but from the time of the passage of the amendatory act, the whole force of the enactment, as to subsequent transactions, rests upon it. The former statute is merged in it, has no vitality distinct from it, and can only be referred to as to past transactions. A repeal, therefore, of the amendatory act does not revive the original act, but both fall together.

Accordingly, *held*, that the act of 1874 (chap. 180, Laws of 1874), repealing the act of 1873 (chap. 525, Laws of 1873), which amended the act of 1867 (chap. 664, Laws of 1867), enabling the supervisors of Montgomery county to refund illegal taxes, did not restore the act of 1867, but both were abrogated.

Where the legislature makes an appropriation of money, and directs the same to be levied by tax, either general or local, for the satisfaction of a claim, which is not a public charge, or recoverable by action, but is only founded on justice and equity, it vests no absolute right in the claimant; and when no condition is imposed upon him, and nothing is done or required to be done by him as a consideration for the concession, there is nothing which gives the enactment the form or sanction of a contract, and so protected by the Constitution Until, therefore, the money is raised and actually paid over, the whole subject is within the control of the legislature, and a repeal of the enactment is valid.

As by the statutes so repealed, as above stated, the amount of a claim for a tax illegally assessed and paid, when determined by the board of supervisors, was made a county charge, and said board had no discretion to allow or disallow the same, or in determining whether they would or would not audit or adjust it, the functions of the board, judicial in their character, and so final and conclusive until reversed, were limited to ascertaining the amount. A repeal, therefore, of the act making the claim a county charge did not reverse any judicial determination of the board.

Accordingly, *held*, where, prior to the passage of the repealing act, a claim had been presented to the board of supervisors, and the amount thereof fixed and determined by it, but the same had not been collected and paid, that the action of the board did not add to the force or effect of the statutes, or make them irrepealable; and that, by the repeal, all of the proceedings of the board fell with them.

The cases wherein the actions of boards of supervisors, in the settlement of disputed claims, or in the audit and allowance of county charges,

are regarded as in their nature judicial, are where the whole matter is within their jurisdiction.

*Supervisors* v. *Briggs* (2 Den., 26), *People* v. *Supervisors* (26 Barb., 118), *Supervisors* v. *Birdsall* (4 Wend., 453), *People* v. *Stocking* (50 Barb., 573), *People* v. *Stout* (23 Barb., 349) distinguished.

(Argued September 26, 1876; decided October 3, 1876.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, affirming an order of Special Term denying a motion on the part of relator for a mandamus requiring defendant to levy and collect a tax to pay an alleged claim in his favor.

The relator is a national bank. In November, 1873, it presented to defendant The Board of Supervisors of Montgomery County, under chapter 525, Laws of 1873, a claim for taxes alleged to have been levied and paid by it upon United States bonds and securities which were exempt from taxation. In December, 1873, said board audited relator's claim at $4,544.19, but did nothing toward levying and collecting the amount by tax, or payment of said sum, after the passage of the act, chapter 180, Laws of 1874, repealing said act of 1873. And in May, 1874, at a meeting of said board, a resolution was adopted reciting the repeal and, thereupon, reconsidering and rescinding the resolution auditing relator's claim. At its annual session, in November, 1874, said board was requested to levy a tax for the amount so awarded to relator, but refused so to do.

*Geo. F. Comstock* for the appellants. Boards of supervisors pass judicially upon claims committed to their decision. (*Brady* v. *Suprs. of N. Y.*, 2 Sandf., 460, 472; 10 N. Y., 260; *People* v. *Suprs. of Liv. Co.*, 26 Barb., 118; 12 How., 204; *People* v. *Stocking*, 50 id., 574; *Suprs. of Chenango* v. *Birdsall*, 4 Wend., 460; *Suprs. of Onondaga* v. *Briggs*, 2 Den., 26, 39; 10 Vt., 123; *People* v. *Suprs. of N. Y.*, 21 How. Pr., 322; *Burch* v. *Newburry*, 10 N. Y., 392; *Dash* v. *Van Kleeck*, 7 J. R., 477, 490; *Lawson* v. *Jeffries*, 47 Miss., 686.) The repeal of a criminal or penal statute ends

all prosecutions under it, and will even arrest a judgment in such an action, but this rule does not apply to statutes giving a civil right or remedy. (*Butler* v. *Palmer*, 1 Hill, 324; *Palmer* v. *Conley*, 4 Den., 374; 2 N. Y., 182; *Pruyn* v. *Tyler*, 18 How. Pr., 331; 1 Metc., 174; 1 Black, 358; *People* v. *Suprs., etc.*, 4 Barb., 64; Sedg. on Const. Law, 108, and note; Smith on Const. Law, 880–882; 6 How., 284.) The vital and only necessary part of the statute was that which directed the board to hear and determine the claim for illegal taxes and to refund the same. (1 N. Y., 30; 1 Kent's Com. [5th ed.], 464; 17 N. Y., 449; *People ex rel. Sherman* v. *Suprs.*, 30 How. Pr., 173; *Willis* v. *Havemeyer*, 5 Duer, 447; 15 N. Y., 595; 49 id., 332.)

*Nathaniel C. Moak* for the respondents. The legislature had power, in 1874, to repeal the act of 1874 as amended. (Cooley's Const. Lim. [2d ed.], 125, 126; Const. U. S., art. 1, § 10, sub. 1; *Satterlee* v. *Matthewson*, 2 Pet., 413; *Watson* v. *Mercer*, 8 id., 88, 110; *Charles River Bridge* v. *Warren Bridge*, 11 id., 539; *Bennet* v. *Boggs Baldwin*, 60 N. Y., 74, 75; *Baltimore, etc.*, v. *Nesbit*, 10 How. [U. S.], 395; *Carpenter* v. *Commonwealth*, 17 id., 456; *Rutger, etc.*, v. *County, etc.*, 24 id., 300; *Garrison* v. *City of N. Y.*, 21 Wal., 196, 203; *In re Mayor, etc.*, 49 N. Y., 150; *Barlow* v. *Gregory*, 31 Conn., 261; *In re* v. *Hulbert*, 17 Ill., 579; *Todd* v. *Crumb*, 5 McL., 172; *Larabee* v. *Baldwin*, 35 Cal., 156; *Daly* v. *Harwell*, 33 Ga., 46; *People* v. *Roper*, 35 N. Y., 629, 637, 638; *Sceva* v. *True*, 53 N. H., 532; *Van Allen* v. *Assrs.*, 3 Wal., 573; *Bank* v. *Magee*, 43 N. Y., 184; *Swift* v. *City of Poughkeepsie*, 37 id., 511; *Bank* v. *Elmira*, 53 id., 49; *Dewey* v. *Suprs., etc.*, 4 T. & C., 606; *Newman* v. *Suprs., etc.*, 45 N. Y., 676; *Nickodemus* v. *Saginaw*, 25 Mich., 456; *Beers* v. *State*, 20 How. [U. S.], 527; *Stocking* v. *Hunt*, 3 Den., 274; *Watson* v. *N. Y. C. R. R. Co.*, 47 N. Y., 157; *Curry* v. *Landers*, 35 Ala. [N. S.], 280; *Conkey* v. *Hart*, 14 N. Y., 22, 28–31; *City of Augusta* v. *North*, 57 Me., 392; *Clarke* v. *McCreary*, 20 Miss., 353; *Morris* v. *People*,

3 Den., 395, 400–402; *People* v. *Lawrence*, 6 Hill, 244; *Chemung Bk.* v. *Suprs.*, 5 Den., 517, 521; *Halstead* v. *Mayor, etc.*, 3 N. Y., 434–438; *People* v. *Bd. of Suprs.*, 18 Barb., 567; *Suprs.* v. *Ellis*, 59 N. Y., 620; *Suprs.* v. *Knipfer*, 37 Wis., 496; *People* v. *Suprs., etc.*, 43 Barb., 232; *Bd. of Suprs.* v. *Wandel*, 6 Lans. 33; 59 N. Y., 645; *People* v. *Taylor*, 1 Abb. Pr. [N. S.], 200, 204, 205; *Reppy* v. *Jeff. Co.*, 47 Me., 68; *Phelps* v. *Bishop*, 46 id., 68; *People* v. *Stout*, 23 Barb., 344; *Suprs.* v. *Briggs*, 2 Den., 408; *People* v. *Suprs.*, 51 N. Y., 408; *People* v. *Suprs. of Herkimer*, 56 Barb., 452; *Morris* v. *People*, 3 Den., 381; *Clark* v. *Miller*, 47 Barb., 38; *Chase* v. *County of Saratoga*, 33 id., 603; *People* v. *Suprs.*, 30 How., 173; *People* v. *Green*, 64 Barb., 172; *People* v. *Stout*, 23 id., 354; *People* v. *Lawrence*, 6 Hill, 244; *In re Kennedy*, 2 S. C. [N. S.], 216; *Biddeson* v. *Whytel*, 3 Burr., 1545; *Cochran* v. *Van Surley*, 20 Wend., 382; *Bradee* v. *Bromfield*, 2 W. & S., 271; *Harvey* v. *Thomas*, 10 Watts, 63; *Beauchamp* v. *The State*, 6 Blackf., 299; *People* v. *Gallagher*, 4 Mich., 244, 248, 253; *People* v. *Comrs.*, 47 N. Y., 501; *Rector, etc.*, v. *County of Phila.*, 24 How. [U. S.], 300.) No remedy was furnished or intended to be on the repeal. (*Dillon* v. *Linder*, 36 Wis., 344; *Feneton's Petition*, 7 Penn. St., 174; *Stower* v. *Immell*, 1 Watts, 25; *Comm.* v. *Beatty*, id., 382; *Key* v. *Goodwin*, 4 M. & P., 351; *Harrison* v. *Smith*, 2 Col., 627; *Butler* v. *Palmer*, 1 Hill, 324; *Washburn* v. *Franklin*, 35 Barb., 600; *Dillon* v. *Linder*, 36 Wis., 349; *Hoppock* v. *Stone*, 49 Barb., 528; *Butler* v. *Palmer*, 1 Hill, 324; *Williams* v. *Co. Comrs.*, 35 Me., 345; *Co. Comrs.* v. *Petro*, 30 id., 221; *In re Palmer*, 40 N. Y., 561; *Ins. Co.* v. *Ritchie*, 5 Wal., 541; *Rex* v. *Justices*, 3 Bur., 1456; *Norris* v. *Crocker*, 13 How. [U. S.], 429; *Assrs* v. *Osborne*, 9 Wal., 567; *Wilson* v. *Jenkins*, 72 N. C., 5; *Livey, Treasurer, etc.*, v. *People ex rel. North*, 8 Mich., 127; *Co. of N. Y.* v. *City of Toronto*, 21 Up. Can. C. P., 95; *Rich. Co. Gas Co.* v. *Town of Middletown*, 1 T. & C., 433; *Springfield* v. *Hall.* 67 Ill., 99; *Bennett* v. *Hargus*, 1 Neb., 419; *Bailey* v. *Mason*, 4 Minn., 546; *Dunwell* v. *Bod-*

*well*, 8 id., 34; *Woodbury* v. *Grimes*, 1 Col., 100; *Gilleland* v. *Schuyler*, 9 Kan., 580; Phil. on Mech. Liens, § 28; *Curtis* v. *Leavit*, 15 N. Y., 13–152; *Town of Danville* v. *Pace*, 25 Grat. [Va.] 1: *Washburn* v. *Franklin*, 35 Barb., 599; *Milhan* v. *Sharp*, 15 Barb., 195; *Benson* v. *Mayor*, 10 id., 223; *People* v. *Law*, 34 id., 506; *People* v. *Bd. Suprs.*, 4 id., 64; *In re Wash. Park*, 56 N. Y., 144; *Pruyn* v. *Tyler*, 18 How., 331; *Palmer* v. *Curley*, 4 Den., 374; *Strubel* v. *Mil. R. R.*, 12 Wis., 67; *Story* v. *Furman*, 25 N. Y., 214; *S. S. Co.* v. *Joliffe*, 2 Wall, 450.) The repeal of the act of 1873 did not leave the provisions of the act of 1867 in force. (*Moore* v. *Mausert*, 49 N. Y., 332; *Goodno* v. *City of Oshkosh*, 31 Wis., 127; *McKibbon* v. *Lester*, 9 Ohio [N. S.], 627; *State* v. *Andrews*, 20 Tex., 230.) The same board of supervisors had power to reconsider the audit and disallow the claim. (*People* v. *Stocking*, 50 Barb., 574; *People* v. *Suprs. of Schenec. Co.*, 35 id., 408; *People* v. *Suprs. of Greene Co.*, 5 Hun, 650; *People* v. *Baker*, 29 Barb., 81; *People* v. *Suprs.*, 23 How. Pr., 89; 3 Abb. Ct. App. Dec., 560; *Lowenberg* v. *People*, 27 N. Y., 339; *People* v. *Powell*, 14 Abb. Pr., 91; *Quimbo Appo* v. *People*, 20 N. Y., 531; *Bd. Suprs.* v. *Ellis*, 59 id., 623; *Brown* v. *Green*, 46 How., 302.)

ALLEN, J. Notwithstanding the assessment and taxation of the relator upon that part of its capital which was invested in the debt of the United States was illegal, as adjudged in *People ex rel. The Bank of Commerce* v. *Commissioners of Taxes, New York City* (2 Black., 620), and *Bank Tax Case* (2 Wall., 200), the right of the relator to relief in this proceeding rests entirely upon the effect to be given to chapter 664 of the Laws of 1867, and the same act as amended by chapter 525 of the Laws of 1873. Aside from these statutes, it is not claimed that the relator is entitled to a mandamus to compel the respondents to levy by tax upon the property of the county the amount thus illegally assessed and paid, and to reimburse the relator. The right sought to be asserted in these proceedings is founded solely in the mandate of

the legislature, as expressed in those acts to the supervisors of Montgomery county, to hear and determine any claims for assessments illegally or erroneously made upon United States bonds or other securities exempt from taxation, and to refund to the proper persons the amount collected or paid upon such assessments. The amounts so paid are made a county charge by the statutes quoted. The acts were imperative upon the board of supervisors, and that body had no discretion to allow or disallow the same when the amount illegally paid was ascertained. Neither had the supervisors any discretion in determining whether they would or would not audit and adjust them. (*People* v. *Suprs. of Otsego Co.*, 51 N. Y., 401.) The acts of the supervisors which can in any aspect be regarded as judicial, and therefore final and conclusive until reversed, had respect solely to the amounts at which claims under the acts should be audited and allowed. Had they been left to determine, also, whether these claims were or were not county charges, their decision of that question might have been claimed to be judicial and in the nature of a judgment, but the functions of the supervisors, judicial in their character, being limited to ascertaining and determining the amount or amounts which, when ascertained and determined, the legislature had directed to be raised by tax and paid as other county charges are provided for and paid, a repeal of the acts making the claims a county charge, does not reverse any judgment or judicial determination of the board of supervisors in respect to any matter referred to them. The cases in which it has been held that the action of boards of supervisors in the settlement of disputed claims, or the audit and allowance of county charges have been regarded as in their nature judicial, have been those where the whole matter was within their jurisdiction. (*Supervisors of Onondaga* v. *Briggs*, 2 Denio, 26; *People* v. *Supervisors of Livingston County*, 26 Barb., 118; *Supervisors of Chenango* v. *Birdsall*, 4 Wend., 453; *People* v. *Stocking*, 50 Barb., 573; *People* v. *Stout*, 23 id., 349.)

The claim of the relator was made a county charge, not by the adjudication and allowance of the board of supervisors,

but by the legislature in the exercise of the taxing power, in respect to which it is sovereign. The legislature may determine what sums shall be raised by taxation, and for what purposes, and it may make appropriations of money, and cause the same to be levied by tax, either general or local, for the satisfaction of a claim which is not recoverable by action, or a public charge in virtue of any previous or existing laws, and which is only founded in equity and justice, or which the legislature regards as equitable and just. (*Town of Guilford* v. *Supervisors of Chenango*, 3 Kern., 143; *Brewster* v. *City of Syracuse*, 19 N. Y., 116.) The action of the legislature in the exercise of the power of taxation is not the subject of judicial review, and, in the present instance, was not the subject of review, or submitted to the action or discretion of the board of supervisors. (*People* v. *Mayor of Brooklyn*, 4 Comst., 419.) The action of the legislature was but a concession to the supposed equities of the claimants, but vested no absolute rights in them, and did not impair or curtail either the general powers of the legislature over taxation or its power in respect to the particular tax. The legislature could not and did not assume to surrender any power in respect to taxation or over the class of claims mentioned in the statutes, so far as they were the proper subjects of legislative action. No conditions were imposed upon the relator or the other claimants under the acts, and nothing was done or required to be done as a remuneration for the concession. There was nothing in the legislation, or any thing done or to be done under it, which would give it the form or sanction of a contract so as to bring it within the protection of the Constitution, prohibiting the passage of laws impairing the obligations of contracts. The relator had, and in the nature of things could have, no vested right in the perpetuity or continuance of the law. Until the money was raised and actually paid over, the whole subject was within the power of the legislature; and a repeal of the act, operating merely as a revocation of a gratuitous concession, was valid as within the legitimate powers of the legislature, having plenary juris-

diction and power over the whole subject. (*Rector, etc., of Christ Church* v. *Philadelphia*, 24 How. [U. S.], 300 ; *People* v. *Commissioners of Taxes of N. Y.*, 47 N. Y., 501.)   As the legislature might have refrained from enacting the laws, and the relator and the other claimants would not have been thereby deprived of any legal rights, so a repeal of the laws, voluntarily and gratuitously passed, worked no legal injury to them.   The action of the supervisors in obeying the mandate of the legislature and ascertaining the amounts that had been paid for taxes upon securities exempt from taxation, could not add to the force and effect of the law or make it irrepealable.   If the legislature had power over it the day before the supervisors acted, they had the same power the day after and until the last moment before the payment of the money to the claimants.   All that was done by the supervisors under the act, was to give effect to the spontaneous grant or concession of the legislature, and, upon the repeal of the law, the acts done necessarily fell with it, or were without legal efficacy or significance from that time.   Had the legislature delegated to the board of supervisors the power to determine whether these claims should be paid as county charges, a repeal of the act, even after action of the board of supervisors, would have terminated all proceedings under it.   In that case, the declaration that the claims should be paid as county charges would have been legislative in its character, while the determination of the amounts would have been judicial.   The relator's right to any remedy exists solely by virtue of the statute and not upon any contract authorized by the statute, and therefore he has no vested right with which the legislature could not interfere.

The only question, then, is whether the act chapter 180, of the Laws of 1874, repealed the act of 1867 as well as that of 1873 (*supra*), and thus recalled the concession and revoked the mandate to the board of supervisors and took from that body all power in the premises.   If by the repeal of the act of 1873 the law of 1867 was restored, then the mandate remained, and the relator was entitled to a *mandamus*, as was held in *People* v. *Supervisors of Otsego County* (*supra*).   The result in such

case would only be to modify the law in apportioning the tax, and the form of the taxation, and impose the whole amount upon the county at large, instead of apportioning it among the towns upon some equitable basis. This was clearly within the province of the legislature, and if such is the effect of the legislation, the mandatory part of the law in all that is substantial to the rights of the relator, and the remedy under the law remains. By the law of 1873 that of 1867 was not repealed; but from the time the former was passed, it became the law as to all proceedings thereafter, while all that had been done before that time was supported by the first act, and must be judged by it. (*Ely* v. *Holton*, 15 N. Y., 595; *Moore* v. *Mausert*, 49 id., 332).

At the time of the passage of the repealing act of 1874, by which the act of 1873 was in terms and by reference to its title and the date of its passage repealed, the act of 1873 was the only law in force. The earlier statute had been merged by being incorporated and united with new provisions in the amendatory act substituted for it. The general rule is, that if a statute that repeals another is itself afterwards repealed, the first statute is thereby revived, without any formal words for that purpose. (1 Black's Com., 90; *Wheeler* v. *Roberts*, 7 Cow., 536.) This rule is especially applicable to the case of a statute repealed in express terms, and in such a case, the reason of the rule is obvious. By a repeal of the repealing act a change of purpose and of policy in the legislature is clearly indicated, and effect is given to the intent of the legislature thus manifested by holding that the original statute is revived. It was held by the Supreme Court of Wisconsin in *Goodno* v. *Oshkosh* (31 Wis., 127), that the repeal of a statute amending a former statute by making the same to read as recited at length in the later act, did not work a revival of the first act; but the decision proceeded upon the effect of a statute in that State, the same as the English statute, twelfth and thirteenth Victoria (chap. 21, § 5), enacting that no act or part of an act repealed by a subsequent act of the legislature shall be revived by the repeal of such repealing act, unless

express words be added reviving such repealed act.  With us the amendment of a statute or part of a statute, by making the same read as prescribed by the amendatory statute, thus incorporating all that is deemed desirable to retain of the old law in the new, is not regarded as a repeal of the parts thus transferred, but from the time of the passage of the new statute, the whole force of the enactment rests upon the later statute.  Although the former act remains upon the statute book and is not repealed, either expressly or by implication, it is no longer the law of the land in respect to new cases that may arise.  In the case before us, the substance and body of the act of 1867 was incorporated in and made a part of the act of 1873 ; the latter statute was but a modification of the details for giving effect to the intention of the legislature to reimburse those who had been illegally assessed and compelled to pay taxes upon securities exempt from taxation.  The passage of that act indicated no change of purpose in the legislature, or any different intent than such as was indicated by the former statute.  The object and purpose of both were the same, to make certain individual claims county charges, and provide for their payment.  The details of both statutes, and all the matters in respect to which the act of 1873 differed from that of 1867, were incidental to the main purpose.  During the existence of the law of 1873, no part of the law of 1867 was in force, or could be referred to for any purpose, except to sustain past transactions under it. Both statutes were special and local, and for a private purpose, did not affect the general administration of State or county affairs, and both could be blotted out without interfering with the governmental machinery.  A repeal of the later and more perfect statute, which was the only law in existence making the claims a county charge and providing for their payment, was indicative of an intention to revoke the concession that had been made, rather than of an intention to restore the first and more imperfect act.  The change of purpose indicated by the repealing statute was radical, going to the subject-matter of the legislation, and was not

limited to the more specific details and modal parts of the act of 1873. The legislature may have supposed, although erroneously, that the act of 1867 was *functus officio*, not having been acted upon by the board of supervisors at its then next meeting. If so, this was a reason why that act should not be mentioned in the repealing statute. This, however, is but a slight circumstance. The broader ground upon which to rest a decision is the fact that the statute which the legislature did in terms repeal was the only law in force at that time under which the relator and others similarly situated had any right to relief or any remedy for the taxes wrongfully imposed, and that the former act upon that subject was by incorporation merged in it and had no vitality distinct from it. So long as statutes must have effect according to the intent of the legislature as manifested by the language employed, and in the light of the circumstances under which the acts are passed, there could hardly be, without express words, a stronger manifestation of an intent to abrogate all legislation giving those who had paid taxes upon government securities a claim upon the county for the amounts paid, than by a law in terms repealing the only statute in force which embodied the only other statute that had been passed upon the subject. In *Warren* v. *Windle* (3 East, 205), it is intimated that where a statute professes to repeal absolutely a prior law and substitutes other statutes upon the subject which are limited to continue only till a certain time, the prior law does not revive after the repealed statute is spent, unless the intent of the legislature to that effect be expressed. The reverse of this was held in *Collins* v. *Smith* (6 Whart., 294), and the case of *Warren* v. *Windle*, criticized by Ch. J. GIBSON. But the revival in the Pennsylvania case of the first statute was held to arise, not from an implication of intention but from a removal of the pressure which kept the original statute down. In this case, the statute of 1867 was annulled, for all practical purposes, by its merger in the statute of 1873 ; and when the latter act was repealed, it as effectually annihilated the act of 1867 as if the same had been expressly

mentioned in the repealing act. This is a necessary impli-
cation from the repeal. By the repeal, therefore, the relator
has lost all right to any remedy under either statute.

The order must be affirmed.

All concur, except RAPALLO, J., not voting.

Order affirmed.