THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF ULSTER, APPELLANTS.

*Collection of State taxes — power of the legislature to alter the system — the duty of collecting them may be imposed upon the several counties — Constitution, art. 1, secs. 1 and 6; art. 3, secs. 16 and 20 — 1879, chap. 382; 1881, chap. 402, and 1883, chap. 516, do not conflict with such constitutional provisions.*

Chapter 382 of 1879, chapter 402 of 1881, and chapter 516 of 1883, modifying the general laws for the collection of the State taxes, by placing the duty of selling the lands upon which the taxes are unpaid upon the counties therein designated, instead of requiring that to be done by the comptroller, and charging the county with the unpaid taxes and compelling them to pay to the comptroller the amount paid by him upon the sale of certain lands in these counties, upon his issuing certificates of the sale thereof and assigning the same to the said counties, are constitutional and valid.

The taxing power of the legislature for public purposes is unlimited, except as specifically restrained by the Constitution.

As the said acts do not impose, continue or revive a tax, within the meaning of those words as used in section 20 of article 3 of the Constitution, it was not necessary to state in them the object to which the tax was to be applied.

The titles of the acts state the subjects thereof with sufficient precision and explicitness to satisfy the requirement of section 16 of article 3 of the Constitution.

The said acts do not violate the provisions of sections 1 or 6 of article 1 of the Constitution, by depriving either the county or the taxpayers thereof of their property, without due process of law.

*Quære,* as to the right of the county to assert in these proceedings any violation of the rights of the individual taxpayers, by whom no complaint was made.

APPEAL from an order made at a Special Term, allowing a writ of peremptory *mandamus*, requiring the board of supervisors of Ulster county to levy, in the same manner as State taxes are levied, upon the taxable property of the county the sum of $28,098.22, and pay the same into the treasury of the State.

By the general system of taxation (chapter 427, Laws of 1855, inserted in 5th ed., R. S., as arts. 2 and 3, title 3, chap. 13, part 1, 1 R. S., 925, 926) the comptroller is to charge the several county treasurers with the amount of the State tax of their respective counties. (Sec. 44 [8].) The county treasurer is to return certain unpaid taxes to the comptroller. (Sec. 40 [4].) For these (after certain rejections) the comptroller is to credit the county treasurer. (Sec. 45 [9].) If the arrears exceed the State tax the comptroller is to pay the surplus to the county treasurer (sec. 46 [10]) or the whole, if there be no State tax. Thus by the general system the State assumes the payment of these arrears, and collects them subsequently by selling the lands. Thus the State takes on itself the business and risk of collecting this class of taxes, which taxes are really chargeable to the county.

By chapter 65, Laws of 1878, a modification was introduced in respect to three counties. By this statute the county was to pay the whole of its State tax, without regard to these uncollected taxes, and was not to be credited with the same. The county treasurer was to proceed and sell the land substantially as the comptroller had done. By chapter 200, Laws of 1879, passed April nineteenth, the county of Ulster was included in the provisions of the statute last mentioned.

By the general system, in case no person bid on the tax sale, the comptroller is to bid in for the State. (1 R. S. [5th ed.], p. 935, § 102 [66].) This duty under the two statutes last cited is devolved on the county treasurer by section twelve.

Thus it will be seen that, in regard to Ulster and some other counties, the advantages and disadvantages of paying these unpaid taxes, of selling the lands therefor, and (as might be the case often), of buying in the lands and thus making a profit, were transferred from the State to the county. The statutes of 1878 and 1879 had provided for future arrears and sales. But a tax sale by the comptroller had taken place in 1877, and in order to bring the proceedings which had taken place under that sale into harmony with the new system in these counties, chapter 382 of the Laws of 1879 was passed May twenty seventh, and after the passage of the act which added Ulster county to the counties under the special system. By this statute the comptroller was directed to transfer to the counties, respectively, the certificates of sale owned by the State for lands bid in in 1877, and to cancel unpaid bids not made by the State, and issue certificates of sale for the lands covered by such bids to the respective counties. He was to charge the county with the amounts for which the parcels of land were sold.

Chapter 402, Laws of 1881, amended the general tax law, viz., that of 1855, above mentioned, among other things, in section 66 of that act (1 R. S. [5th ed.), 935, § 102), and made it the duty of the comptroller at tax sales to bid in for the counties, as to which there were special laws as above stated, lands in those counties respectively on which there were no bids ; and required the counties respectively to pay the amount, receiving from the comptroller the certificates of sale.

Chapter 516, Laws of 1883, required the comptroller, in respect to these same counties, to assign to them respectively certificates of sale of land therein, bid in by him for the State at the sale of 1881, and to cancel bids, etc., and required the counties respectively to pay the amounts. This law was substantially the same as to the tax sale of 1881 that the law above cited of 1879 was as to the tax sale of 1877. The comptroller has complied with the requirements of these three laws of 1879, 1881 and 1883, and an amount is payable under each of those laws by the county of Ulster to the State, which the county has refused to pay. The county has, in each of the years from 1879 to 1883, inclusive, caused a sale of lands returned for unpaid taxes to be made, according to chapter 65 of the Laws of 1878, and on such sales various sums have been

received. Most of the lands sold have been bought by the county, and certificates have been issued to the county.

The county treasurer, in his reports for 1880, 1881 and 1882, credited the county with the amount received from State certificates, and he also made a full report in 1880 of the subject to the supervisors. The people obtained from the Special Term an order that a peremptory *mandamus* issue requiring the supervisors to raise by taxation the amount due as aforesaid to the State. And the defendants appeal. The ground of appeal is that the laws are unconstitutional.

*D. O'Brien*, attorney general, for the People.

*J. Newton Fiero*, for the appellant.

LEARNED, P. J.:

"No law can be pronounced invalid for the reason simply that it violates our notions of justice, is oppressive and unfair in its operations. * * * If it violates no constitutional provision it is valid and must be obeyed." (*Bertholf* v. *O'Reilly*, 74 N. Y., 516.) What constitutional provision is violated by these statutes? It is not enough to show (if this indeed be shown) that they are oppressive and unfair.

These three statutes authorize the comptroller to charge certain amounts against the county, and the statutes of 1877 and 1881 declare that the amounts shall be payable in the same manner as the State tax. Is there anything in the Constitution which forbids this charge of certain amounts upon a certain county? The language of the decisions of our courts most forcibly states that the taxing powers of the legislature "for public purposes is unlimited, except as specifically restrained by the Constitution. Not only is the power unlimited as to the extent of the taxation to be imposed, but as to the manner. * * * It is not improbable that the safety of the public may require that some constitutional restrictions shall be interposed, but until this is done the judiciary cannot control its exercise." (*Matter of Van Antwerp*, 56 N. Y., 261.) This only reiterating the doctrine of *People ex rel. Griffin* v. *Brooklyn* (4 id., 419), and *Town of Guilford* v. *Supervisors* (13 id., 143). The only qualification which has been made to this strong language is in the

case of *Weismer* v. *Douglas* (64 id., 91), in which it was held that the legislalature could not compel the raising of money by taxation for the mere benefit of private individuals.   Thus it may be seen that that decision, while it held the power of the legislature in respect to taxation to be limited by the *purpose* for which it is exercised, did not question that the power was unlimited when the purpose was public.   We have thus far spoken of these statutes as if they had arbitrarily imposed a certain charge upon the county of Ulster. But such is by no means the case.   It is apparent from the statement already given of the tax laws that the statutes in question are only a modification of the general system, placing the duty of selling lands for unpaid taxes on the county, instead of the State, and with that duty charging the county with the unpaid tax, instead of having such tax assumed by the State.

The land which is taxed is the ultimate source from which the tax is to be obtained    The county is charged with its whole proportion of the State tax.   And it may justly remain so charged until the money has actually been received out of the land.   And in this connection we may notice what seems to be an error on the part of the defendants.   They object that the county is required to pay the amounts bid, and urge that it does not follow that the amounts bid were the amounts of the tax.   Hence they say that the charge against the county is in nowise the collection of the tax on the property.   But they overlook the provision of law that only enough of each parcel is to be sold as will pay the tax, interest and charges.   Hence, in fact, the bid is the amount of the tax, including the interest and charges.   And, therefore, nothing is by these laws charged to the county except the amount (with interest and charges) of the tax which should originally have been collected.   We do not see, therefore, how it can be said that the persons who bid on these sales may have bid much in excess of the tax.   And so far as an argument is based on this assertion, tending to show that these statutes are not a part of the taxing system, it seems to us to fail. It is because the State has failed to receive the tax which was payable, in respect to these lands, that the matter remains in abeyance. The duty of paying the tax is thrown on the county, together with the means of enforcing it out of the land on which it was laid.

It is urged again that these statutes are unconstitutional under section 20, article 3. The defendants urge that if these statutes are connecting with the taxing power, then they either impose, continue or revive a tax, and that the tax and the object is not stated. We think that this position is not sound. These statutes are not the imposition or the continuance or the revival of a tax. They are a mere modification in the process of collecting a tax already imposed. This is the evident meaning of the statutes. The State is entitled to have the money which it imposes by way of tax. The process of selling the land is but a step toward obtaining the money. The bidding in the land is but another step. Practically, the tax is not thereby paid in such sense that its subsequent collection is the collection of a new tax.

Again, the defendants insist that the statutes are unconstitutional under section 16, article 3, in that the subject is not expressed in the title. On looking at the decisions upon this perplexing section of the Constitution and the attempts which have been made to give a reasonable construction to it, we are satisfied that this objection is not valid. It is of little use to discuss a question which, after all, must only be decided by comparing the title with the subject of the statutes and determining whether the former expresses the latter.

And once more the defendants urge that these statutes are unconstitutional as in violation of sections 1 and 6, article 1, in that they deprive a member of the State or a person of property without due process of law. These provisions, of course, do not take away the power of taxation. (*Town of Guilford* v. *Supervisors*, 13 N. Y., 145.) The legislature " can, under the power to levy taxes, apportion the public burthens among all the taxpaying citizens of the State, or among those of a particular section or political division."

Towns and counties, although having certain corporate or *quasi* corporate powers, are but political divisions organized for the convenient exercise of the political power. (*Lorillard* v. *Town of Monroe*, 11 N. Y., 392; *People ex rel. Downing* v. *Stout*, 23 Barb., 34; *People* v. *Supervisors of Montgomery*, 67 N. Y., 109.)

In *Laramie County* v. *Albany County* (92 U. S., 307), the legislature had organized two new counties and had included within

their limits a part of an existing county, but had made no provision for apportioning debts or liabilities. It was held that the old county had no claim on the new for the old debts. The subject of the rights of towns and counties was discussed at length. It was shown that they are parts of the machinery for carrying on the business of the State; that they are mere creatures of legislative will. It cannot then be said that there are any rights of the county as such which are taken away in violation of the Constitution. But it is said that, if not the rights of the county, at least the rights of the individual citizens are affected. Passing over the question whether it lies with these defendants to assert the rights of the individual taxpayers of Ulster, who make no complaint so far as appears, we return to the doctrine above asserted; and that is that in the exercise of the right of taxation the legislature is limited only by the purpose of the tax, not by the manner of taxation or the inequality with which the tax is imposed. When the tax on a piece of land is not collected it is evident that the deficiency thus arising must be made up in some way. It may be by the whole State or it may be by the county where the land lies, or even by the town, and the legislature must decide.

We are of opinion that the order be affirmed, with costs.

Present — LEARNED, P. J.; BOOKES and LANDON, JJ.

Order affirmed, with costs.