THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN C. WILMERDING, Appellant.

A statute which is amended and re-enacted so as to read as prescribed in the amendatory statute is thereby wholly annulled as to all future cases, and, except as to rights and duties already existing, becomes merged and incorporated in the later statute.

*In re Prime* (*ante,* page 347), distinguished.

In case the amendatory act is repealed, this does not revive the original act, but both fall by virtue of the repeal.

*In re Rochester Water Comrs.* (66 N. Y. 415), distinguished.

A legislative intent to revive a law which has, by legislative action, already been wholly annihilated, is not alone sufficient to accomplish such revival; there must be some legislative expression using language equivalent to a re-enactment.

Legislative action, therefore, upon a separate subject grounded upon an assumed revivor of the original act, does not accomplish this, in the absence of language equivalent to a re-enactment.

Accordingly *held,* that the act of 1868 (Chap. 106, Laws of 1868), which repealed the act of 1866 (Chap. 547, Laws of 1866), amending, "so as to read as follows," the provision of the act of 1846 (§ 1, chap. 62, Laws of 1846) in reference to sales at auction, which imposed certain fees or duties upon all sales of goods and merchandise at auction, did not revive the original act; and that, since the repeal, there has been and now is no statute compelling auctioneers to pay such duties; and this,

although by provisions in the Repealing Act, it appears that the legislature supposed that by it the original act was revived.

So also, *held*, the fact was immaterial that by subsequent legislation it appears that the legislature supposed some statute was in force imposing such duties (Chap. 287, Laws of 1878), or that the act of 1866 was still in force. (Chap. 310, Laws of 1883.)

*People* v. *Wilmerding* (62 Hun, 391), reversed.

(Argued November 29, 1892; decided January 17, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made the first Monday of November, 1891, which directed judgment in favor of plaintiff on submission of a controversy under the Code of Civil Procedure (§ 1279).

The question arising in this case was as to the right of the state under the provisions of the Revised Statutes (1 R. S. 529, § 1), and the various amendments thereto to impose duties upon sales of imported goods, made by plaintiff as an auctioneer in the city of New York.

The facts, so far as material, are stated in the opinion.

*Daniel P. Hays* for appellant. From the time of the passage of section 1, chapter 547, of the Laws of 1866 the whole force of the enactment rested upon that act; the former act, section 1, chapter 62 of the Laws of 1846, was merged in it and had no vitality distinct from it. The repeal therefore of the act of 1866, by chapter 106, section 1 of the Laws of 1868, did not revive the act of 1846, but both fell together. (*People* v. *Suprs.*, 67 N. Y. 109; *Ely* v. *Holton*, 15 id. 595; *Angel* v. *Town of Hume*, 17 Hun, 374, 380; *Harris* v. *Suprs.*, 13 id. 283; *McMillan* v. *Bellows*, 37 id. 214.) Considering for the sake of argument, however, that the foregoing point is not well taken, and that section 1 of chapter 62, of the Laws of 1846 is still in force, it is respectfully submitted that such statute is unconstitutional and cannot be enforced for that reason. (*People* v. *Maning*, 3 Keyes, 374; *Crandall* v. *State*, 6 Wall. 35; *Cook* v. *Pennsylvania*, 97 U. S. 556; *Brown* v. *Maryland*, 12 Wheat. 419.) If section 1, chapter 62 of the Laws of 1846,

is still in force, it cannot be so construed as to give the state the right to discriminate between imported goods in the original packages and imported goods which have been broken up into smaller packages and have lost their character as imports and are mixed with the general merchandise of the country. (*People ex rel.* v. *Bd. Suprs.*, 13 Abb. [N. C.] 426 ; *Waller* v. *Harris*, 20 Wend. 561 ; *Powers* v. *Barney*, 5 Blatch. 283.)

*William A. Poste* for respondent.   The statutes imposing duties or taxes upon auction sales are still in force.   (1 R. S. chap. 17, § 1 ; Laws of 1846, chap. 62 ; *Smith* v. *People*, 47 N. Y. 330 ; *People* v. *Morrison*, 78 id. 84 ; *Anderson* v. *Anderson*, 112 id. 104 ; *In re R. W. Comrs.*, 66 id. 413 ; *People* v. *Clute*, 50 id. 451.)   The goods which were taken from the original packing cases and sold separate and apart from the other goods contained in such cases were subject to the auction duty.   (*Brown* v. *Maryland*, 12 Wheat. 419 ; *Cook* v. *Pennsylvania*, 97 U. S. 566 ; *Thurlow* v. *Massachusetts*, 5 How. Pr. 504 ; *Low* v. *Austin*, 13 Wall. 29 ; *Welton* v. *State*, 91 U. S. 275, 282 ; *Coe* v. *Errol*, 116 id. 517, 527 ; *Leisy* v. *Hardin*, 135 id. 100, 117 ; *People* v. *Maring*, 3 Keyes, 374.)   This submission cannot be made the medium for enforcing a counterclaim for duties heretofore paid, even if the court should hold that the statute imposing auction duties has been repealed.   (*People* v. *Dennison*, 84 N. Y. 272.)

Peckham, J.   This controversy comes before us on appeal from a judgment of the General Term of the first department in favor of the plaintiff, entered upon a submission of an agreed case to the court without suit.

The defendant is an auctioneer residing in the city of New York and during the last six months of the year ending in December, 1889, he made certain sales of goods which had been imported, and upon which sales the plaintiff claimed certain fees or duties had accrued, and were payable by the defendant to the state comptroller.   The defendant asserted that the act

under which the duties were claimed had been repealed before the duties were alleged to have accrued. If wrong in that he asserted the act was unconstitutional in that it assumed to exact duties on imports and that the goods upon the sale of which the duties were demanded were imported goods and sold in their original packages, and that no duties upon such sales could be constitutionally demanded under state authority.

It was also alleged that this statute under which the duties were claimed had been held unconstitutional so far as applicable to sales of imported articles in their original packages, and even if the goods in question had become mingled with the general merchandise of the country at the time when the sales were made upon which the duties accrued, yet the act could not be separated in its application and rendered valid as to duties upon sales of goods after their first sale in the original importer's packages, while void as to such first sales.

It is unnecessary to discuss the constitutional question or the question whether the goods were still imports at the time of the sale which had not yet become part of the merchandise of the country, provided we should conclude there was no existing statute which directed the collection of the duties claimed. Some examination of the legislation on this subject is necessary in order to answer this question. It is sufficient for this purpose to resort to the act as set forth in 1 R. S. 528, relating to sales by auctioneers.

The first section provided for the payment of duties on merchandise therein described, each time the goods were struck off on a sale, various rates of duties being imposed upon different classes of merchandise, depending upon its character and the place of growth or manufacture. The act contained some forty sections and legislated concerning many details regarding sales by auction and as to auctioneers, their giving bonds, making quarterly accounts, verifying the same, paying the duties imposed by law, and many other matters. The act was in the nature of a Code relating to auctioneers and sales of goods by them at auction and it remained in this condition until the passage of the act of 1846, Chap. 62.

That act in its first section made some alterations in the provisions of the first section of the revised statutes above cited and also enacted some new provisions in other sections as to auctioneers, and by section ten expressly repealed the first and fourth sections of the act in the revised statutes.

The act as contained in the revised statutes was not touched by the act of 1846, other than by the repeal of its first and fourth sections, and after the passage of the act of 1846 the two acts stood together as constituting the legislation upon the subject treated of by them.

The next act upon the subject was passed in 1866 and is chapter 547 of the laws of that year. The beginning of the first section of the act is in these words: "Section 1. Section one of chapter 62 of the Laws of 1846, is hereby amended so as to read as follows:" The section as amended then makes the same provisions for imposing duties or fees upon each and every sale of goods and merchandise at auction and at the same rates as in the first section of the act of 1846. The amendment, however, enlarges the class of persons liable to pay these duties on sales by including brokers offering goods for sale by sample or otherwise, and an addition to the section is also made in regard to the fees or duties upon damaged goods, and as thus amended the section stood thereafter as the only legislation providing for the payment of duties on sales, etc. The first section in the act of 1846 was annulled and destroyed by it as to all future cases.

Then came the act, chapter 106, of the Laws of 1868, part of whose title is, "An act to repeal chapter 547 of the Laws of 1866," and the first section of which enacts that "chapter 547 of the Laws of 1866, entitled 'An act to amend chapter 62 of the Laws of 1846 and other acts additional to the same,' is hereby repealed." At the same time and by the same section the act chapter 399 of the Laws of 1849, is amended "so as to read as follows," and it then proceeds to amend that section so as to add a provision that the agents employed by the comptroller might approve the bond required by law to be given by auctioneers, etc.

It is now contended on the part of the defendant that the repeal by the act of 1868 of the enactment contained in the act of 1866, does not revive the first section of the act of 1846, and that since the statute of 1868 there has been no statute in existence under which auctioneers can be compelled to pay fees or duties upon sales of goods at auctions.

It is a general rule that where a statute repealing an earlier statute is itself repealed, the earlier statute comes in force upon such last repeal. (*Van Denburgh* v. *Greenbush* 66 N. Y. 1.) There is also another rule well established in this court which declares that a statute declaring a former statute to be thereby amended so as to read as prescribed in the amending act, is not a repeal of the original statute, and that from the time of the passage of the amendatory act such act is the only enactment on the subject as to future transactions, and the former statute is merged and lost in, and has no vitality distinct from, the amendatory act. And it has been held that a repeal of the amendatory act does not revive the original act, but both fall by virtue of the repeal of the later act. (*People* v. *Supervisors*, 67 N. Y. 109.)

If there were nothing more than this statement, it would seem that under the authority of this case the repeal of the act of 1866 had not worked the restoration of the first section of the act of 1846, and that consequently there was no statute in existence which provided for collecting those fees or duties. The plaintiffs, however, answer this claim by alleging that it was, nevertheless, the legislative intent contained in the act of 1868 to revive the first section of the act of 1846 by the repeal of the act of 1866. The evidence of this intent is to be found, they say, in the fact that if the section were not revived there would be no statute for the collection of fees or duties upon sales of goods at auction. Further evidence of such intent is also to be found, as the plaintiffs allege, in the fact that the repealing act of 1868, in its second section, amends so as to read as is therein prescribed, the second section of the act of 1849, chap. 399, which was passed to prevent frauds in auctioneers' returns made to the comptroller, and

such second section of this act of 1868, while amending the provision of the act of 1849 for the appointment of an agent by the comptroller to carry the act into effect, and empowering the agent to administer oaths to auctioneers and requiring necessary information to ascertain the true amount of goods sold at auction by them, adds a provision authorizing the agent to take and approve the bond required by law to be given by auctioneers, and provides for their fees therefor. It is asked what would be the sense or propriety of amending the act of 1849 in this manner, if at the same time and in the same statute enacting such amendments a section existed which by virtue of its provisions utterly wiped out all enactments providing for the payment of fees or duties by auctioneers upon the sale of goods or merchandise at auction? Judging from these facts as to the legislative intent, the plaintiffs urge that the legislature intended to restore the first section of the act of 1846, when it repealed in so many words the act of 1866.

The fact first stated that unless the first section of the act of 1846 is to be held as revived by the repeal of the act of 1866, there is no statute providing for the collection of these duties, is of no significance when standing alone. That may have been the legislative purpose, and judging of that purpose from the use of the language adopted, it would be conclusive of an intent to accomplish that very result. The fact becomes important only when regarded in connection with the second ground taken by the plaintiffs as just stated. The whole argument does not as it seems to me give due and proper weight to the principle which has been so plainly and so recently decided by this court in the case of *People* v. *Supervisors,* above cited.

It was there distinctly decided that an earlier statute which was amended and re-enacted in the shape of an amendment, so as to read as prescribed in the later amendatory statute, was thereby wholly annulled as to all future cases and became merged and incorporated into the later statute. It was further held that when the statute accomplishing an amendment in this manner is itself repealed, the repealing act as effectu-

ally annihilated the earlier act which was amended as if it had been expressly mentioned in such repealing act.

It thus appears that the enactment of the later statute of 1866 by reason of the language used in the first section thereof, did thereby incorporate into it all the life and force of the first section of the act of 1846, so that the later act stood from that time and as to all future cases as the sole and only exponent of legislative intent and power upon the subject and such act thereby utterly blotted out and annihilated the earlier statute, except as to rights or duties already existing. And when the act of 1866 was itself repealed in clear and direct language by the act of 1868, the latter act not only by repealing annihilated the act of 1866, but also the first section of the act of 1846, as if such first section had been mentioned in the repealing act. This is expressly decided by the case above cited. And it did so upon the principle that the first section of the act of 1846, by reason of its amendment in 1866, and its incorporation in that act, lost all separate existence, and must therefore stand or fall, live or die with the act of which it had become an integral part, and if that act were repealed, such repeal could not thereby revive the first section of the act of 1846, because it had no existence and had had none since the enactment of the act of 1866.

In repealing the later act it is the same (so far as regards the prior act) as if such later act were the only one which had ever existed upon the subject, and the prior one could no more spring into life simply by reason of such repeal than if such prior act had never been passed. The mere legislative intent of the act of 1868 (assuming it to exist) could not revive the first section of the act of 1846 without something in the nature of an enactment to that effect.

There is nothing in the case of *Matter of Rochester Water Commrs.* (66 N. Y. 415), which is at all inconsistent with the views herein expressed. The opinion therein was written by the same learned judge who subsequently wrote in the *People* v. *Supervisors,* and there is no inconsistency between the two. In the *Rochester* case the later statute which

amended section 23 of the earlier statute "so as to read as follows," did in truth enact an entirely new section, leaving wholly out of it the original twenty-third section of the earlier act. From a perusal of the two acts and the powers granted therein the court felt sure that the legislature by amending the twenty-third section of the earlier act in the manner stated in the later one, did not intend to repeal the earlier twenty-third section, and in truth did intend to incorporate its text into the amended section so that it should all read as one section, and thus the original section was to be continued in force. This intent was said to be made more apparent by reference to the fact that the same legislature which passed the amendatory statute and but five days subsequent thereto re-enacted section 23 of the earlier statute with section 23 of the amendatory act added to it.

The amendment was accomplished in the same form as the first amendment (as is stated by the court), by enacting that the original section should be "amended so as to read as follows."

Taking all the facts into consideration, the court held that it was plain the legislature, by the first amendment of the original section, did not intend to thereby repeal such original section, and giving effect to the legislative intent, the court held that such original twenty-third section was not repealed by the passage of the later amendatory act.

Applying this principle to the case in hand, the inquiry would be as to the intent of the legislature of 1866 in passing the act which, among other things, amended the first section of the act of 1846. Did that legislature intend that the first section of the act of 1846 should no longer (as to all future matters) continue in force other than as it was re-enacted and made to form a part of the body of the section in the act of 1866? To that question there can be but one answer, and that is, that the legislature most undoubtedly meant by the passage of the act of 1866, to wipe out for the future, and to utterly destroy the first section of the act of 1846; and it is perfectly clear that such intention was carried out. Having thus, by the

amendment of 1866, accomplished the total annihilation of the first section of the act of 1846, as to all matters subsequently arising, the case is then brought within the principle of that of *People* v. *Supervisors* (*supra*), and hence a mere repeal of the act of 1866, without some language equivalent to an enactment, could not revive the absolutely dead provision of the first section of the act of 1846.

The language used by the legislature of 1868 in repealing the whole of the act of 1866, is incapable of any construction other than that which the plain language of the statute calls for. It says, in so many words, that such act "is hereby repealed," and it was thereby repealed.

The case falls within the principle of the above cited case of *People* v. *Supervisors.*

How is this result altered by the claim that the legislature of 1868 supposed, when it passed the act repealing the act of 1866, that it thereby revived the first section of the act of 1846? That supposition of the legislature of 1868, assuming it to be proved by the facts to which the plaintiffs have called our attention, cannot alter the effect of the passage of the act of 1866 upon that of 1846. The first section of the act of 1846 was thereby and for the future wholly and effectually blotted out, and the act of 1866 remained the only act upon the subject. Is it of any materiality that in repealing the act of 1866, the legislature of 1868 intended to recreate the first section of the act of 1846, and thought it had done so, as long as it used no language to accomplish such intent? There are no words of revival or enactment to be found in the act of 1868. And to say that the act of 1868 did not wholly repeal the act of 1866 is to refuse to give judicial sanction to legislative language which is so plain as to be susceptible of but one meaning. If the entire act of 1866 be repealed by the act of 1868, then the only claim that remains must be that, notwithstanding such repeal, which in itself confessedly did not revive the first section of the act of 1846, yet the legislature proceeded in the following section of the act of 1868, to enact provisions upon other matters, which it would not have done if it had supposed

that the repeal of the act of 1866 did not work a revival of the first section of the act of 1846, and, therefore, such supposition or intent to revive, even though unaccompanied by any language which could be construed as enacting such revival, must be considered as sufficient to revive the prior act. I cannot assent to this reasoning. This is not a question of mere legislative intent. A legislative intent to work a revival of a law which already, by legislative action, has been wholly annihilated, is not alone sufficient to accomplish such revival. There must be some language used which is at least equivalent to an enactment before an act, which had become wholly extinct and blotted out, can be revived and have the breath of life again breathed into it.

I think it clear that legislative action upon a separate subject grounded upon an assumed revivor of a prior act, which was not accomplished by the language used, cannot stand in the place of or supply language equivalent to an enactment. In other words legislative intent in this instance is not equal to legislative action. The fact that in 1878 the legislature passed an act which proved that it supposed that there was then some statute in existence which provided for the payment of these fees and duties, is of no moment. If the simple belief of the legislature of 1868 as to the effect of its repeal of the act of 1866, could not accomplish the re-enactment of the first section of the act of 1846, it is quite certain the result was not attained by the erroneous belief of the legislature of 1878.

Again it appears that by chapter 310 of the laws of 1883, the legislature proceeded to amend section 3 of chapter 547 of the laws of 1866, " so as to read as follows," not remembering, as it would seem, that a legislature had totally repealed the whole of that act fifteen years before by the act of 1868 already cited.

Very probably the legislature of 1883 was not familiar with the act of 1868, and it also probably believed that section 3 of the act of 1866 was in full life. The belief of the legislature of 1883, however, has not the slightest tendency to prove what

was the legal effect of the action of the legislature of 1868 upon the prior statutes. That is a simple question of law. We find from an examination of the act of 1868, that the act of 1866 was plainly and in unmistakable language repealed. The fact that the legislature of 1883 treated the third section of the act of 1866 as still alive, is simply proof of a legislative error in regard to the law.

The case at bar also plainly differs from that of *In re Estate of Prime* (*ante*, page 347), decided at this term. In that case the later act re-enacted the provisions of the former act although not in identical language. It was argued by the appellants that the later act repealed by implication the former one and that rights which had already accrued under the former one could neither be enforced under it because of its implied repeal, nor under the later act because its provisions were prospective only. This highly technical and refined reasoning was not sustained by the court.

I have alluded to all the statutes which have seemed to me material, and by reason of these various enactments I think that subsequent to 1868 there was no statute of this state which provided for the payment of the duties or fees upon sales of merchandise at auction and that the plaintiffs are not entitled to recover the amounts demanded by them. As to the amounts already paid by the defendant, I do not think he can recover them back even though paid under protest. There was no coercion in the case, so that the payments which defendant actually made were purely voluntary and for that reason not to be recovered back.

The judgment should be reversed and judgment given in favor of the defendant in conformity with this opinion, with costs in all courts.

All concur (ANDREWS, Ch. J., and EARL, J., in result), except MAYNARD, J., not sitting.

Judgment accordingly.